UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALI JONES p/k/a "ALI;" TORHI HARPER p/k/a "MURPHY LEE;" ROBERT KYJUAN CLEVELAND p/k/a "KYJUAN;" and LAVELL WEBB | : : : : : | **CASE NO.:** |
| Plaintiff | : : | **COMPLAINT** |
| vs. | : : : | **DEMAND FOR JURY TRIAL** |
| UNIVERSAL MUSIC GROUP; UNIVERSAL MUSIC PUBLISHING GROUP; UNIVERSAL MUSIC CORP.; BMG SONGS, INC.; KOBALT MUSIC PUBLISHING AMERICA INC. d/b/a KOBALT MUSIC GROUP; HIPGNOSIS SONGS GROUP, LLC; And CORNELL IRA HAYNES, JR. p/k/a "NELLY | : : : : : : : : : : | |
| Defendants | : : | |

ALI JONES p/k/a "ALI" ("Plaintiff Jones); TORHI HARPER p/k/a
"MURPHY LEE" ("Plaintiff Harper"); ROBERT KYJUAN p/k/a "KYJUAN"
("Plaintiff Kyjuan") and LAVELL WEBB ("Plaintiff Webb") collectively professionally
known as the "ST. LUNATICS" (collectively the "Plaintiffs"), by and through their
undersigned attorneys, for their Complaint against UNIVERSAL MUSIC GROUP, its
agents, wholly or partially owned subsidiaries, parent companies, affiliates and/or holding
companies ("Defendant UMG") UNIVERSAL MUSIC PUBLISHING GROUP, its
agents, wholly or partially owned subsidiaries, parent companies, affiliates and/or holding
companies ("Defendant UMPG"), BMG SONGS, INC., its agents, wholly or partially
owned subsidiaries, parent companies, affiliates and/or holding companies ("Defendant
BMG"), KOBALT MUSIC PUBLISHING AMERICA, INC. d/b/a KOBALT MUSIC

**GROUP**, its agents, wholly or partially owned subsidiaries, parent companies, affiliates and/or holding companies ("Defendant KOBALT"); HIPGNOSIS SONGS GROUP, LLC ("Defendant Hipgnosis")' and **CORNELL IRA HAYNES, JR. "NELLY"** (Defendant Haynes") (collectively referred to herein as the "Defendants") allege, upon knowledge to themselves and upon information and belief as to all other matters, as follows:

## I.    NATURE OF THE ACTION

1.    This is a civil action for direct, contributory and/or vicarious copyright infringement, unjust enrichment,  quantum meruit and/or related state law claims on behalf of Plaintiffs, the authors, creators, composers, writers and copyright owners of the lyrics to eight original musical compositions entitled: (i) "Steal the Show;" (ii) "Thick Thick Girl;" (iii) "Country Grammar;" (iv) "Wrap Something/Sumden;" (v) "Batter Up;" (vi) "Iz U;" (vii) "Go;" and (viii) "Gimmie What You Go" (collectively referred to herein as the "Original Compositions")

2.    The Original Compositions were unlawfully utilized and/or exploited by Defendants to create a musical record album entitled "Country Grammar" (the "Infringing Album").

3.    Defendants, jointly and/or severally, willfully and intentionally: (i) registered the Infringing Album with United States Copyright Office falsely identifying themselves as the authors, writer, creators, and/or copyright owners of the Original Compositions contained therein; (ii) manufactured, distributed, used, commercialized, sold and/or otherwise exploited the Original Composition, via their exploitation of the Infringing Album, without Plaintiffs' written authorization or consent; (iii) induced and/or caused various third parties including, but not limited to, various television and radio

stations to broadcast, publicly perform and/or otherwise exploit the Original Composition in the State of New York, the State of Georgia, State of Missouri and throughout the United States and overseas, without Plaintiffs' written authorization and consent; (iv) unlawfully profited from the unauthorized manufacturing, distribution, use, commercialization, sale, broadcasting, public performance and other exploitation of the Original Compositions via the exploitation of the Infringing Album; and (v) deprived Plaintiffs of substantial income, proceeds, monies, concert revenues, fees, royalties and/or other remuneration, directly and/or indirectly, related to the distribution, use, commercialization, sale, broadcasting, public performance, licensing and/or other exploitation of the Original Compositions.

4.    By this action, Plaintiffs seek a declaration by this Court that they are the authors, creators, composers, writers and/or lawful copyright owners of the Original Compositions contained in the Infringing Album and that the Defendants: (i) knowingly, willfully and intentionally infringed Plaintiffs' copyrights and exclusive rights in and relating to the Original Compositions in violation of the United States Copyright Act, 17 U.S.C. §§106, 115 and 501; (ii) induced, caused and/or materially contributed to the infringement of Plaintiffs' copyrights and/or exclusive rights in and relating to the Original Compositions by others in violation of the United States Copyright Act, 17 U.S.C. §§106, 115 and 501; (iii) were unjustly enriched by the services performed by Plaintiffs in authoring, creating, composing, and/or writing the Original Compositions; (iv) deprived Plaintiffs of substantial income, proceeds, monies, fees, royalties and other remuneration, directly and/or indirectly related to Defendants' distribution, use, commercialization, sale, broadcasting, public performance, licensing and other exploitation of the Original Compositions.

5.      That Defendants have committed successive acts of copyright infringement that are continuing in nature.

6.      If it is determined that Plaintiffs are not the sole creator, authors and copyright owners of the Original Composition, then Plaintiffs state, in the alternative, that they are co-authors and/or co-owners of the Original Compositions, contained in the Infringing Album, with Defendant Haynes.

7.      Plaintiffs state that they and Defendant Haynes collaborated by creating and writing the Original Compositions for the common purpose of commercially exploiting the Original Compositions.

8.      Plaintiffs further state, in the alternative, that they and Defendant Haynes intended that their combined, but independent, contributions be utilized to create the Original Compositions and, as a result, are joint authors and/or joint owners of the Original Compositions contained in the Infringing Album.

9.      As joint authors of the Original Compositions, Plaintiffs hereby demand an accounting of all income, profits and/or royalties generated by the distribution, sale, use, commercialization, public performance, concert revenue and/or any other exploitation of the Original Compositions by Defendant Haynes and/or by any of the Defendants Defendant Haynes licensed or granted rights to exploit the Original Compositions.

10.     Plaintiffs are entitled to all legal, equitable and financial relief, as requested herein, to remedy Defendants' unlawful and infringing conduct.

## II.      <u>JURISDICTION AND VENUE</u>

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b).  This Court also has original jurisdiction over this

action pursuant to 28 U.S.C. §1332 (a), because there is complete diversity between Plaintiffs and Defendants and the total amount in controversy exceeds $75,000.00. This Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. §1367.

12.    Defendants' unlawful acts alleged herein are continuing in nature and that each act constitutes a separate and successive act of copyright infringement by Defendants with each new act of infringement giving rise to a discrete claim of infringement that accrues at the time the infringement occurred.

13.    This Court has personal jurisdiction over all Defendants because Defendants: (i) solicit, transact and conduct business in the State of New York and in this District and are regularly doing or soliciting business or engaging in a persistent course of conduct in this State and in this District; (ii) receive substantial revenue from the State of New York and the infringing conduct occurred in the State of New York and within this District; (iii) expect or reasonably should expect their conduct to have consequences in the State of New York; (iv) directly or indirectly infringed Plaintiffs' copyrights in and to the Original Compositions, via the exploitation of the Infringing Album, in the State of New York and in this District; and (v) have caused harm to Plaintiffs in the State of New York.

14.    Venue is properly laid in this District pursuant to 28 U.S.C. § 1391 (b) and (c), §1400 (a) in that Defendants transact business in this judicial district, and/or a substantial part of the events giving rise to Plaintiffs' causes of action occurred in this District.

### III.    PARTIES

15.    Plaintiff Jones is a musical recording artist and the composer, arranger, writer and copyright owner of the Original Compositions.   A copy of Plaintiffs' copyright registrations for the Original Compositions is attached hereto as **Exhibit A.**  Plaintiff Jones resides in Atlanta, Georgia. Plaintiff Jones is, and at all times relevant herein was, a member of the musical recording group known as the "St. Lunatics."

16.    Plaintiff Harper is a musical recording artist and the composer, arranger, writer and copyright owner of the Original Compositions.  A copy of Plaintiffs' copyright registrations for the Original Compositions is attached hereto as **Exhibit A.**   Plaintiff Harper resides in Atlanta, Georgia. Plaintiff Harper is, and at all times relevant herein was, a member of the musical recording group known as the "St. Lunatics."

17.    Plaintiff Cleveland is a musical recording artist and the composer, arranger, writer and copyright owner of the Original Compositions.  A copy of Plaintiffs' copyright registration for the Original Compositions is attached hereto as **Exhibit A.**   Plaintiff Cleveland resides in St. Louis, Missouri.  Plaintiff Cleveland is, and at all times relevant herein was, a member of the musical recording group known as the "St. Lunatics."

18.    Plaintiff Webb is a musical recording artist and the composer, arranger, writer and copyright owner of the Original Compositions.  A copy of Plaintiffs' copyright registration for the Original Compositions is attached hereto as **Exhibit A.**   Plaintiff Webb resides in St. Charles, Missouri.  Plaintiff Webb is, and at all times relevant herein was, a member of the musical recording group known as the "St. Lunatics."

19.    Upon information and belief, Defendant UMG is a corporation duly organized and existing under the laws of a State located within the United States with its

principal place of business at 1755 Broadway, New York, New York 10019. Upon information and belief, Defendant UMG is one of the largest music companies in the World and is licensed and authorized to do business in the State of New York and actively transacts business in the State of New York and in this District.

20.     Upon information and belief, Defendant UMG is engaged in the business of manufacturing, distributing, marketing, selling and otherwise exploiting musical compositions in the form of compact discs ("cds"), tapes, and phonographic records. Upon information and belief, Defendant UMG directly or indirectly created, manufactured, distributed, used, commercialized, sold and/or otherwise exploited the Original Compositions contained in the Infringing Album in the State of New York, within this District, throughout the United States and overseas, all without Plaintiffs' written authorization and consent.

21.     Upon information and belief, Defendant UMPG is a subsidiary of Universal Music Group Holdings, Inc., is a corporation duly organized and existing under the laws of a State located within the United States with its principal place of business at 2100 Colorado Avenue, Santa Monica, California 90404. Upon information and belief, Defendant UMPG is one of the largest song publishing companies in the World and is licensed and authorized to do business in the State of New York and actively transacts business in the State of New York and in this District.

22.     Upon information and belief, Defendant UMPG is engaged in the business of acquiring, exploiting and licensing musical compositions and collecting royalties from the exploitation of musical compositions for copyright owners. Upon information and belief, Defendant UMPG directly or indirectly published, distributed, publicly performed,

used, licensed, commercialized, sold, collected royalties and otherwise exploited the Original Compositions, contained in the Infringing Album, in the State of New York, within this District, throughout the United States and overseas, all without Plaintiffs' written authorization and consent.

23.    Defendant BMG is a corporation duly organized and existing under the laws of the State located within the United States with its principal place of business at 1540 Broadway, New York, New York 10036.  Upon information and belief, Defendant BMG is one of the largest song publishing companies in the World and is licensed and authorized to do business in the State of New York and actively transacts business in the State of New York and in this District.

24.    Upon information and belief, Defendant BMG is engaged in the business of acquiring, exploiting and licensing musical compositions and collecting royalties from the exploitation of musical compositions for copyright owners.  Upon information and belief, Defendant BMG directly or indirectly published, distributed, publicly performed, used, licensed, commercialized, sold, collected royalties and otherwise exploited the Original Compositions, contained in the Infringing Album, in the State of New York, within this District, throughout the United States and overseas, all without Plaintiffs' written authorization and consent.

25.    Upon information and belief, Defendant KOBALT is a corporation duly organized and existing under the laws of a State located within the United States with its principal place of business at 2 Gansevoort Street, 6th Floor, New York, New York 10014. Upon information and belief, Defendant KOBALT is a song publishing and/or publishing

administration company and is licensed and authorized to do business in the State of New York and actively transacts business in the State of New York and in this District.

26.    Upon information and belief, Defendant KOBALT is engaged in the business of acquiring, exploiting and licensing musical compositions and collecting royalties from the exploitation of musical compositions for copyright owners.  Upon information and belief, Defendant KOBALT directly or indirectly published, distributed, publicly performed, used, licensed, commercialized, sold, collected royalties and otherwise exploited the Original Compositions, contained in the Infringing Album, in the State of New York, within this District, throughout the United States and overseas, all without Plaintiffs' written authorization and consent.

27.    Upon information and belief, Defendant HIPGNOSIS is a corporation duly organized and existing under the laws of a State located within the United States with its principal place of business at CT Corporation, 28 Liberty Street, New York, New York 10005. Upon information and belief, Defendant HIPGNOSIS is a song publishing and/or publishing administration company and is licensed and authorized to do business in the State of New York and actively transacts business in the State of New York and in this District.

28.    Upon information and belief, Defendant HIPGNOSIS is engaged in the business of acquiring, exploiting and licensing musical compositions and collecting royalties from the exploitation of musical compositions for copyright owners.  Upon information and belief, Defendant HIPGNOSIS directly or indirectly published, distributed, publicly performed, used, licensed, commercialized, sold, collected royalties and otherwise exploited the Original Compositions, contained in the Infringing Album, in

the State of New York, within this District, throughout the United States and overseas, all without Plaintiffs' written authorization and consent.

29.    Defendant Haynes is a musical recording artist in the music industry, specifically in the "rap" or "hip-hop" genre. Upon information and belief, Defendant Haynes is a resident of the State of California, but actively transacts business in the State of New York and in this District. Defendant Haynes was a member of the musical recording group known as the "St. Lunatics." Upon information and belief, Defendant Haynes has falsely and fraudulently claimed that he is the author, arranger, composer, writer and/or creator of the Original Compositions contained in the Infringing Album and unlawfully exploited the Original Compositions without Plaintiffs' written authorization and consent.

30.    In the alternative, to the extent that Defendant Haynes' alleged independent contribution to the creation of the lyrics contained in the Original Compositions was copyrightable, then Plaintiffs and Defendants are co-authors or joint authors of the Original Compositions because Plaintiffs and Defendant Haynes jointly contributed to the creation of the Original Compositions with the intention that they be considered joint authors or joint owners thereof.

31.    On or about June 2021, Defendant Haynes, by and through his legal representatives, expressly repudiated Plaintiffs' claims of joint authorship.

32.    Defendant Haynes has commercially exploited the Original Compositions but has failed to provide an accounting of the gross income, monies, royalties, and/or other remuneration generated from his exploitation of the Original Compositions to his co-authors and/or joint authors, Plaintiffs.

33.     As joint authors, Plaintiffs are entitled to an accounting of all gross income, monies, royalties, and/or other remuneration generated from Defendant Haynes' exploitation of the Original Compositions.

## IV.     FACTS COMMON TO ALL CLAIMS FOR RELIEF

### A.     Plaintiffs and Defendant Haynes form the group St. Lunatics

34.     Plaintiffs and Defendant Haynes were childhood friends growing up in St. Louis, Missouri.  Sometime in 1993, the Plaintiffs and Defendant Haynes formed rap group called the "St. Lunatics."  While Defendant Haynes demonstrated considerable skills as performer and vocalist, he lacked the song writing creativity possessed by the other members of the St. Lunatics. Defendant Haynes and Plaintiffs worked diligently in trying to get a foot hold in the music industry.

35.     Between 1993 and 1997, Defendant Haynes and Plaintiffs began performing and recording "demo" song recordings as the "St. Lunatics." During these years Plaintiffs provided the majority of the song writing and lyrical compositions duties for the St Lunatics.  Defendant Haynes showed considerable talent in his lyrical delivery of the songs written and arranged by Plaintiffs. The St. Lunatics, through their song writing, demo tapes and public performances, worked hard to gain the attention of various record companies in the music industry in search of a recording deal.

36.     Sometime in 1997 the St. Lunatics released their first single entitled "Gimme What You Got."  "Gimme What You Got" was written by Plaintiffs and performed by Plaintiffs and Defendant Haynes as the St. Lunatics.  "Gimme What You Got" was a commercial success.  The notoriety of "Gimme What You Got" continued throughout the rest of the 90's giving the Plaintiffs and Defendant Haynes a foot hold in

the hip-hop industry.  Through continued radio play of "Gimme What You Got" and live performances of the song by Plaintiffs and Defendant Haynes, record companies began courting the St. Lunatics and expressed interest in signing them to a record deal.

### B.    Plaintiffs create the Original Compositions

37.    Upon information and belief, as the St. Lunatics notoriety and fame continued to grow throughout the rest of the 1990s, in the year 2000, Defendant UMG, via its wholly owned subsidiary Universal Records, signed Defendant Haynes to a record deal. Also in 2000, Defendant UMG agreed to sign the St. Lunatics to a recording deal.

38.    Since Defendant Haynes' solo album would be released before the St. Lunatics first album, Plaintiffs began writing the lyrics to what would become the Original Compositions.

39.    Sometime in 2000, Plaintiffs and Defendant Haynes began recording the Original Compositions at Unique Recording Studios in New York City.  It was during these recording sessions that Plaintiffs finalized the lyrics to the Original Compositions and worked with Defendant Haynes to record the Infringing Album.  Plaintiffs provided all of the lyrics to the Original Compositions, with Defendant Haynes providing some lyrical arrangement and writing, and also vocal performances of the Original Compositions.

40.    At no time during the recording of the Infringing Album did Defendant Haynes ever dispute that Plaintiffs wrote and arranged the lyrics contained in the Original Compositions.  In fact, Defendant Haynes, in video of their recording sessions, freely admits that Plaintiffs were, and are, the writers of the Original Compositions contained in the Infringing Album.

41.     The extent of Defendant Haynes' contribution to the creation of the Original Compositions will be determined at trial; however, Plaintiffs state that to the extent Defendant Haynes' independent contribution to the creation of the Original Compositions were copyrightable, then the Plaintiffs and Defendant Haynes intended their collaborations to result in them being deemed co-authors of the Original Compositions

**C.     The Infringing Album is a Commercial Success**

42.     Upon information and belief, the Infringing Album (entitled *Country Grammar)* was released sometime in 2000 and become a huge commercial success, making Defendant Haynes a certified rap star.

43.     Upon information and belief, as of 2016 the Infringing Album has sold more than 10 million copies.

44.     Upon information and belief, as of January 1, 2020, the Defendants have continued to manufacture, distribute, sell, license, publicly perform, and/or otherwise exploit the Original Compositions by exploiting the Infringing Album.

**D.     Plaintiffs promised publishing credit for the Original Compositions**

45.     During the recording, and subsequent distribution and sale, of the Infringing Album, Defendant Haynes privately and publicly acknowledged that Plaintiffs were the lyric writers for the Original Compositions and promised to ensure that Plaintiffs received writing and publishing credit for the Original Compositions.

46.     Plaintiffs, relying on the promises made to them by Defendant Haynes, continued to perform shows with Defendant Haynes both in his solo performances (as back up performers) and as the group St. Lunatics.

**E.    St. Lunatics release their first record album in 2001**

47.    Approximately 12 months after the release of the Infringing Album, Plaintiffs, performing as the St. Lunatics, released their first studio album entitled "Free City."

48.    Upon information and belief, "Free City" was released by Defendant UMG and/or its wholly owned subsidiary Universal Records.  "Free City" was a commercial and critical success.  Eventually, "Free City" reached number 3 on the US pop charts; number 1 on the US R&B Charts; and was certified gold (i.e., over 500,000 copies sold in the US) and platinum (over 1 million copies sold in the US).

49.    With the success of "Free City," Plaintiffs began touring all over the United States performing hit songs from the album.  During this time Defendant Haynes and the Infringing Album were also enjoying continued commercial success and popularity.

**F.    Plaintiffs repeatedly request proof of their Publishing and writing credit for the Original Compositions**

50.    During the success of both the Infringing Album and "Free City," Plaintiffs and Defendant Haynes remained extremely busy with concert tours, radio performances, and otherwise promoting their respective albums.  During this period of time Plaintiffs repeatedly reached out to Defendant Haynes and/or his authorized representatives inquiring about their publishing and writers' credit for the Original Compositions contained in the Infringing Album.

51.    Defendant Haynes, and/or his authorized representatives, repeatedly assured Plaintiffs that they would receive all of their publishing and writing credit for the Original Compositions.  Defendant Haynes further explained that because of all the success

the parties were experiencing with the Infringing Album and the "Free City" album the record companies had been focusing on sales and promoting the albums.

### G.    Defendant Haynes takes credit for creating the Original Compositions contained in the Infringing Album

52.    Despite repeated assurances by Defendant Haynes that Plaintiffs would receive their writing credit and publishing income for creating the Original Compositions, Plaintiffs, sometime in 2020, eventually discovered that Defendant Haynes had been lying to them the entire time.

53.    Plaintiffs eventually discovered that not only did they not receive any credit as authors and/or creators of the Original Compositions, but that Defendant Haynes, and others, took full credit for creating the Original Compositions contained in the Infringing Album.

54.    Upon information and belief, despite repeatedly promising Plaintiffs that they would receive full recognition and credit for creating and authoring the lyrics contained in the Original Composition, it eventually became clear that Defendant Haynes had no intention of providing the Plaintiffs with any such credit or recognition.

55.    Not only did Defendant Haynes fraudulently represent to others that he was a writer and/or creator of the Original Compositions, he also, upon information and belief, allowed other individuals within his circle to receive credit and publishing income for songs written by Plaintiffs.

### H.    Plaintiffs were manipulated by Defendant Haynes

56.    Plaintiffs, for many years, detrimentally relied on the material representations made by Defendant Haynes that they would receive the proper recognition for creating the Original Composition and also receive the publishing income generated by

the sales, distribution, licensing and/or other exploitation of the Original Compositions via the Infringing Album.

57.    Every time Plaintiffs confronted Defendant Haynes about their publishing credit and income for creating and authoring the Original Compositions, Defendant Haynes would assure them as "friends" he would never prevent them from receiving the financial success they were entitled to as writers of the Original Compositions.

58.    Unfortunately, Plaintiffs, reasonably believing that their friend and former band member would never steal credit for writing the Original Compositions, did not initially pursue any legal remedies and believed Defendant Haynes would make good on his promise to ensure Plaintiffs received: (i) recognition as writers and authors of the Original Compositions contained in the Infringing Album; and (ii) the publishing income from the exploitation of the Infringing Album.

**I.    Plaintiffs have no alternative but to pursue legal remedies**

59.    Sometime in 2020, Plaintiffs became aware of a dispute between an individual named Willie Woods, Jr. p/k/a John Long ("Mr. Woods") and Defendant Haynes and/or Defendant UMPG regarding the song "Ride Wit Me" which was contained in the Infringing Album.  Upon information and belief, Mr. Woods claimed to be one of the writers on the song "Ride Wit Me" and was demanding his portion of publishing royalties from the sales, public performance and/or exploitation of "Ride Wit Me."

60.    Realizing that they were not the only writers on the Infringing Album that Defendant Haynes had failed to provide proper credit and publishing income, Plaintiffs decided to seek legal advice regarding their copyrights in and to the Original Compositions.

61.    Sometime in March 2021, Plaintiffs hired an attorney who wrote to Defendant UMPG informing them that Plaintiffs were writers and authors of the Original Compositions, that Plaintiffs were entitled to writers' credit and publishing income from the exploitation of the Original Compositions via the Infringing Album.

62.    Upon information and belief, Defendant UMPG sent a copy of the aforementioned letter to Defendant Haynes' legal representation.  Sometime in 2021, Defendant Haynes, via his legal representatives, expressly repudiated Plaintiffs' claims of authorship or joint authorship of the Original Compositions.  In addition, Defendant Haynes, via his legal representatives, claimed that Plaintiffs could not pursue or protect their copyrights in and to the Original Compositions because the statute of limitations for such claims had expired.

63.    As a result of this communication with Defendant Haynes' legal representatives in 2021, it was clear that Defendant Haynes: did not acknowledge Plaintiffs as the authors and/or co-authors of the Original Compositions; had no intention of providing Plaintiffs with their  writers' credit on the Infringing Album; and would not pay Plaintiffs their past due publishing income or account to Plaintiffs the total amount of income generated by the exploitation of the Original Compositions via the Infringing Album. Given the aforementioned, Plaintiffs had no alternative but to commence legal proceedings against Defendants.

**J.    Defendants' Infringing Conduct**

64.    Upon information and belief, Defendant UMG, by and through its wholly owned subsidiary Universal Records, manufactured, distributed, commercialized, sold and/or otherwise exploited (and continues to manufacture, distribute, commercialize, sell

and/or otherwise exploit) the Original Compositions, via its exploitation of the Infringing Album, throughout the United States, including the State of New York and overseas without Plaintiffs' written authorization and consent.

65.    Upon information and belief, Defendant UMG, by and through its wholly owned subsidiary Universal Records, knowingly, willfully and intentionally caused (and continues to cause) various third parties including, but not limited to, various television and radio stations to broadcast, to publicly perform and otherwise exploit the Original Compositions, via its exploitation of the Infringing Album, in the State of New York, within this District, throughout the United States and overseas, even though Defendant UMG knew, or should have known, that they did not have Plaintiff's written authorization to do so.

66.    Upon information and belief, Defendant UMG, by and through its wholly owned subsidiary Universal Records, falsely or incorrectly attributed authorship of the Original Compositions contained in the Infringing Album to Defendant Haynes and others but not Plaintiffs.

67.    Upon information and belief, Defendant Haynes registered the Original Compositions contained in the Infringing Album with the United States Copyright Office, and falsely and fraudulently identified himself, and others, instead of Plaintiffs, as the author of the Original Compositions.  Defendant Haynes intentionally and willfully failed to identify Plaintiffs as the authors and/or writers of the Original Compositions contained in the Infringing Album.

68.    Upon information and belief, Defendant Haynes falsely and fraudulently assigned to Defendants UMPG, BMG and/or KOBALT his alleged publishing interest in and to the Original Compositions contained in the Infringing Album.

69.    Upon information and belief, Defendants UMPG, BMG, KOBALT and/or HIPGNOSIS have falsely or incorrectly represented to the United States Copyright Office that they possess a copyright interest in and to the Original Compositions contained in the Infringing Album and/or are authorized to administer the publishing income generated by the exploitation of the Original Compositions, via their exploitation of the Infringing Album.

70.    Upon information and belief, the "Infringing Album" was a critical and commercial success, selling over 10,000,000 records worldwide and generating hundreds of millions of dollars in revenue and profits for the Defendants. It is undisputed that Defendants have illegally exploited, and continue to illegally exploit the Original Compositions, via the exploitation of the Infringing Album.

71.    Upon information and belief, Defendants have unlawfully and illegally received and/or collected, and continue to receive and collect: (i) (i) significant income from various public performance societies (eg. ASCAP, BMI, SESAC) for the broadcast and public performance of the Original Compositions contained in the Infringing Album; (ii) substantial mechanical royalties from the sale of the Original Compositions via the Infringing Album; and (iii) substantial income from the exploitation of the Original Compositions via the exploitation of the Infringing Album.

72.    The acts of Defendants identified herein, have been completely deprived, and continue to deprive, Plaintiffs of any and all income directly or indirectly related to the Original Compositions.

73.    Defendants knew, or should have known, that they needed Plaintiffs' written authorization and written consent in order to manufacture, distribute, use, commercialize, sell and/or otherwise exploit the Original Compositions via exploitation of the Infringing Album.    However, Defendants never obtained Plaintiffs' written authorization and/or written consent for any such exploitation.

74.    Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS knew, or should have known, that they needed Plaintiffs' written authorization and/or written consent in order to receive and/or collect any monies, royalties, license fees and/or other income directly or indirectly related to the exploitation of the Original Compositions via the exploitation of the Infringing Album. However, Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS never obtained Plaintiffs' written authorization and/or written consent.

75.    Upon information and belief, Defendants have received, and have continued to receive, substantial income from the distribution, use, commercialization, sale and/or other exploitation of the Original Compositions via their exploitation of the Infringing Album, and have failed to make any payments to Plaintiffs.

76.    As the creator, composer, writer and author of the Original Compositions, Plaintiffs were, and are, entitled to receive: (i) a fee for authoring, creating, arranging and composing the Original Compositions embodied in the Infringing Album; (ii) performance royalties for the broadcast, public performance and other exploitation of the Original

Compositions via the exploitation of the Infringing Album from various royalty collection societies (e.g. ASCAP, BMI, SESAC); (iii) mechanical royalties from the sale of the Original Compositions via the sale of the Infringing Album; and (iv) other statutory royalties as provided by the Copyright Act.

77.    As a result of Defendants' conduct, Plaintiffs have been completely deprived, and continue to be deprived, of any income, monies, royalties or other form of remuneration from the distribution, use, commercialization, sale, public performance or other exploitation of the Original Compositions via exploitation of the Infringing Album.

78.    If it is determined that Defendant Haynes' contribution to the creation of the Original Compositions is copyrightable; then Plaintiffs state that they are co-authors and/or co-owners of the copyrights and other exclusive rights in and to the Original Compositions with Defendant Haynes, and/or any of the other named Defendants,  or any such Defendant(s)' subsidiaries, affiliates, agents, employees or representatives, who Defendant Haynes has licensed or granted any copyrights in and to the Original Compositions.

79.    Defendant Haynes, via his legal representatives, has expressly repudiated Plaintiffs' claim of co-authorship and/or co-ownership in and to the Original Compositions. Therefore, Plaintiffs demand a declaration that they are joint authors of the Original Composition and, as a result, demand an accounting of all income, proceeds, profits, royalties, fees, licenses and other exploitation of the Original Compositions via the exploitation of the Infringing Album by Defendant Haynes or any such co-author and/or co-owner Defendants.

## CAUSES OF ACTION

### COUNT I
### DIRECT COPYRIGHT INFRINGEMENT
### (DEFENDANTS UMG, UMGP, BMG, KOBALT and HIPGNOSIS)

80.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 79 as if fully set forth herein.

81.    Defendants UMG, UMPG, BMG,  KOBALT and/or HIPGNOSIS have directly or indirectly infringed, and continue to infringe, Plaintiffs' copyrights and exclusive rights, in and relating to the Original Compositions, under copyright law by manufacturing, distributing, using, commercializing, selling, broadcasting, publicly performing and otherwise exploiting the Original Compositions via their exploitation of the Infringing Album without Plaintiffs' written authorization or written consent, all in violation of the Copyright Act, 17 U.S.C. §§ 106, 115 and 501. Defendants UMG, UMPG, BMG and/or KOBALT direct infringement of Plaintiffs' copyrights in and to the Original Compositions are continuing in nature.

82.    Upon information and belief, the foregoing acts of infringement committed by Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS have been willful, intentional, purposeful and have been continuing in nature.

83.    As a direct and proximate result of the acts of infringement committed by Defendants UMG, UMPG, BMG,  KOBALT and/or HIPGNOSIS Plaintiffs have suffered, and will continue to suffer, severe economic and non-economic injuries and damages; therefore, Plaintiffs are entitled to recover their actual damages and/or the gross revenue, income and/or profits derived by Defendants UMG, UMPG, BMG,  KOBALT and/or

HIPGNOSIS that are attributable to their infringement of Plaintiffs' copyrights and exclusive rights in and to the Original Compositions pursuant to 17 U.S.C. §504(b).

84.    The exact amount of Plaintiffs' actual damages and the gross revenue, income and/or profits of Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS directly related to their infringement of Plaintiffs' copyrights and exclusive rights in and to the Original Compositions are continuing in nature and will be established at trial, but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

85.    Alternatively, Plaintiffs may elect to be awarded and are entitled to the maximum amount of statutory damages, to the extent permitted by law, pursuant to 17 U.S.C. §504(c), with respect to each work infringed and each act of infringement. Such statutory damages will be established at trial but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

86.    Plaintiffs are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. §505.

## COUNT II
## DIRECT COPYRIGHT INFRINGEMENT
## (DEFENDANT HAYNES)

87.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 86 as if fully set forth herein.

88.    As of January 1, 2020, Defendants Haynes directly infringed, and continues to infringe, Plaintiffs' copyrights and exclusive rights, in and relating to the Original Compositions embodied in the Infringing Album by falsely and fraudulently claiming authorship of the Original Compositions by licensing, selling and/or assigning Plaintiffs' copyrights in and relating to the Composition to various individuals and entities including,

but not limited to, Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS without Plaintiffs' written authorization or written consent, all in violation of the Copyright Act, 17 U.S.C. §§ 106, 115 and/or 501. Defendant Haynes direct infringement of Plaintiffs' copyrights in and to the Original Compositions are continuing in nature.

89.     The foregoing acts of infringement committed by Defendants have been willful, intentional, and purposeful, are continuing in nature.

90.     As a direct and proximate result of the infringing acts committed by Defendant Haynes, Plaintiffs have suffered, and continues to suffer, severe economic and non-economic injuries and damages; therefore, Plaintiffs are entitled to his actual damages and the gross revenue, income and/or profits derived by Defendant Haynes that are attributable to their infringement of Plaintiffs' copyrights and exclusive rights in and to the Original Compositions pursuant to 17 U.S.C. §504(b).

91.     The exact amount of Plaintiffs' actual damages and the gross revenue, income and/or profits of Defendant Haynes are continuing in nature and will be established at trial, but are in no event less than $50,000,000 (FIFTY MILLION DOLLARS).

92.     Alternatively, Plaintiffs may elect to be awarded, and, therefore, is entitled to the maximum amount of statutory damages, to the extent permitted by law, pursuant to 17 U.S.C. §504(c), with respect to each work infringed and each act of infringement. Such statutory damages will be established at trial but are in no event less than $50,000,000 (FIFTY MILLION DOLLARS).

93.     Plaintiffs are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. §505.

## COUNT III
## CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (DEFENDANTS UMG, UMPG, BMG, KOBALT and HIPGNOSIS)

94.    Plaintiff repeat and re-allege each and every allegation contained in paragraphs 1 through 93 as if fully set forth herein.

95.    Upon information and belief, Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS intentionally induced, caused, encouraged and/or assisted, and continues to induce, cause, encourage and/or assist, various third parties, including, but not limited to, various radio and television stations to reproduce, broadcast, publicly perform and/or otherwise exploit the Original Compositions contained in the Infringing Album in the State of New York, within this District, throughout the United States and overseas even though Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS knew, or should have known, that it did not have Plaintiffs' written authorization or written consent to reproduce, broadcast, publicly perform or otherwise exploit the Original Compositions in this or any other manner.

96.    Each time a third party, including, but not limited to, various radio and television stations, as a result of inducement, encouragement and/or assistance of Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS reproduced, broadcasted, publicly performed and/or otherwise exploited the Original Compositions contained in the Infringing Album, a single, continuing infringement of Plaintiffs' copyrights and exclusive rights in and to the Original Compositions occurred and continues to occur.

97.    Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS by and through their conduct, engaged in, and continues to engage in, the business of knowingly inducing, causing, encouraging, assisting and/or materially contributing to the above

described unauthorized broadcasting, public performance and other exploitation of the Original Compositions contained in the Infringing Album; thereby infringing Plaintiffs' copyrights and exclusive rights in and relating to the Original Compositions under copyright law.

98.     Upon information and belief, the foregoing acts by Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS have been willful, intentional, purposeful and are continuing in nature.

99.     The conduct of Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS, as alleged herein, constitutes contributory infringement of Plaintiffs' copyrights and exclusive rights in and relating to the Original Compositions in violation of the Copyright Act, 17 U.S.C. §§ 106, 115 and 501.

100.    As a direct and proximate result of the acts of contributory infringement committed by Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS, Plaintiffs have suffered, and  continues to suffer, severe economic and non-economic injuries and damages; therefore, Plaintiffs are entitled to their actual damages and the gross revenue, income and/or profits derived by Defendants UMG, UMPG, BMG,  KOBALT and/or HIPGNOSIS that are attributable to their contributory infringement of Plaintiffs' copyrights and exclusive rights in and to the Original Compositions pursuant to 17 U.S.C. §504(b).

101.    The exact amount of Plaintiffs' actual damages and the gross revenue, income and/or profits of Defendants UMG, UMPG, BMG,  KOBALT and/or HIPGNOSIS are continuing in nature but will be established at trial, but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

102.    Alternatively, Plaintiffs may elect to be awarded, and, therefore, is entitled to the maximum amount of statutory damages, to the extent permitted by law, pursuant to 17 U.S.C. §504(c), with respect to each work infringed and each act of infringement. Such statutory damages will be established at trial, but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

103.    Plaintiffs are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. §505.

### COUNT IV
### CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (DEFENDANTS HAYNES)

104.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 103 as if fully set forth herein.

105.    Upon information and belief, Defendants Haynes willfully, knowingly and intentionally induced, caused, encouraged and/or assisted, and continues to induce, cause, encourage and/or assist, various third parties, including, but not limited to, Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS to manufacture, distribute, use, commercialize, sell, license, broadcast, publicly perform, and otherwise exploit the Original Compositions contained in the Infringing Album even though Defendant Haynes knew, or should have known that he did not have Plaintiffs' written authorization or written consent to do so.

106.    Each time Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS, as a result of Defendant Haynes' inducement, encouragement and/or assistance, manufactured, distributed, used, commercialized, sold, broadcasted, licensed, publicly performed and/or otherwise exploited the Original Compositions contained in the

Infringing Album a single, continuing act of infringement of Plaintiffs' copyright and exclusive rights in and to the Original Composition occurred and such infringement continues to occurs.

107.    Through his conduct, Defendant Haynes engaged in, and continues to engage in, the business of knowingly inducing, causing, encouraging, assisting and/or materially contributing to the above described unauthorized manufacturing, distribution, use, commercialization, selling, broadcasting, public performance and other exploitation of the Original Compositions contained in the Infringing Album; thereby infringing Plaintiff's copyrights and exclusive rights in and relating to the Original Compositions under copyright law. Such infringement continues to occur.

108.    Upon information and belief, the foregoing acts by Defendant Haynes has been willful, intentional, purposeful and are continuous in nature.

109.    The acts alleged herein by Defendant Haynes constitute contributory infringement of Plaintiffs' copyrights and exclusive rights in and relating to the Original Compositions in violation of the Copyright Act, 17 U.S.C. §§ 106, 115 and 501.

110.    As a direct and proximate result of the acts of contributory infringement committed by Defendant Haynes, Plaintiffs have suffered, and continues to suffer, severe economic and non-economic injuries and damages; therefore, Plaintiffs are entitled to recover their actual damages and the gross revenue, income and/or profits derived by Defendant Haynes that are attributable to his contributory infringement of Plaintiffs' copyrights and exclusive rights in and to the Original Compositions pursuant to 17 U.S.C. §504(b).

1119.    The exact amount of Plaintiffs actual damages, gross revenues, income and/or profits of Defendant Haynes are continuing in nature and will be established at trial, but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

112.    Alternatively, Plaintiffs may elect to be awarded, and, therefore, are entitled to the maximum amount of statutory damages, to the extent permitted by law, pursuant to 17 U.S.C. §504(c), with respect to each work infringed and each act of infringement. Such statutory damages will be established at trial, but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

113.    Plaintiffs are further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. §505.

## COUNT V
## UNJUST ENRICHMENT

114.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 113 as if fully set forth herein.

115.    Plaintiffs, in good faith and in reliance on the promises and representations made by Defendant Haynes, produced, arranged, authored, composed and/or created the Original Compositions.

116.    Upon information and belief, Defendants Haynes and UMG directly or indirectly: (i) consented to the services rendered by Plaintiffs in composing, creating, arranging and/or authoring the Original Compositions; (ii) knew that Plaintiffs expected to receive a fee and royalties for the exploitation of the Original Compositions; (iii) knew that Plaintiffs expected to receive "Writer" credit on the Infringing Album for the Original Compositions; and (iv) knew that Plaintiffs expected to receive mechanical, public

performance and/or statutory royalties related to the exploitation of the Original Compositions contained in the Infringing Album.

117.    Upon information and belief, Defendants Haynes and UMG received a substantial economic benefit from the services rendered by Plaintiffs in composing, creating, arranging, and authoring Original Compositions and were unjustly enriched as a result of the distribution, use, commercialization, sale, broadcasting, licensing, public performance and/or other exploitation of the Original Compositions contained in the Infringing Album.

118.    As the author, composer, arranger and/or creator of the Original Compositions contained in the Infringing Album, Plaintiffs were (and are) reasonably entitled to receive: (i) 100% of the publishing rights in and to the Original Compositions contained in the Infringing Album; (iii) 100% of all public performance income generated by the exploitation of the Original Compositions; (iv) one-half (½) of the total mechanical royalties paid, and/or due and payable, for the Original Compositions as a result of the continued distribution, sale and/or other exploitation of the Infringing Album; (v) "Writer" credit on the Infringing Album for the Original Compositions; and (vi) any and all other statutory royalties and customary remuneration paid to an author of a musical composition.

119.    The total amount of income, monies, royalties and other remuneration Plaintiffs is reasonably entitled to receive, as a result of services rendered by Plaintiffs in composing, arranging, authoring and/or creating the Original Compositions, embodied in the Infringing Album are continuing in nature and will be established at trial, but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

## COUNT VI
## DECLARATION OF JOINT AUTHORSHIP &
## DEMAND FOR AN ACCOUNTING

120.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 119 as if fully set forth herein.

121.    Alleging in the alternative, Plaintiffs state that to the extent that Defendant Haynes' contribution to the creation of the Original Compositions was, or is, copyrightable, then Plaintiffs state that they are, at the very least, co-authors, joint authors and/or co-owners of the Original Compositions contained in the Infringing Album with Defendant Haynes.

122.    That Plaintiffs contributions to the Original Compositions were independently copyrightable.

123.    That Plaintiffs and Defendant Haynes created and authored the Original Compositions together and intended that their separate contributions to the Original Compositions be merged together into one work constituting the Infringing Album.

124.    That Defendant Haynes has publicly stated and declared that Plaintiffs were, and are, the authors and writers of the lyrics contained in the Original Compositions.

125.    That on or about June 8, 2021, Defendant Haynes, via his legal representatives, plainly and expressly repudiated Plaintiffs' claim of authorship and/or joint authorship in and to the Original Compositions.

126.    That Plaintiffs are entitled to a declaration from this Court that they are joint authors of the Original Compositions with Defendant Haynes.

127.    That as co-authors, joint-authors and/or co-owners Plaintiffs and Defendant Haynes own the Original Compositions and the Infringing Album co-equally.

128.    That as co-authors, joint-authors and/or co-owners, Plaintiffs are entitled to receive a detailed account of any and all income or profits Defendant Haynes received as a result of his exploitation of the Original Compositions contained in the Infringing Album.

129.    That despite repeated requests from Plaintiffs, Defendant Haynes has refused to provide any such accounting to Plaintiffs.

130.    That despite written demands to Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS for an accounting of all income and profits generated from the exploitation of the Original Compositions contained in the Infringing Album, Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS, have refused to do so.

131.    That as result of acts of Defendants hereunder, Plaintiffs have not received an accounting (or any accompanying payment) of the total monies generated and/or received by Defendants from the exploitation of the Original Compositions contained in the Infringing Album.

132.    Plaintiffs hereby demand the Defendants produce an accounting of all monies or income generated by the exploitation of the Original Compositions contained in the Infringing Album and that each Plaintiff receive a co-equal share of such monies or income with any other co-author or co-owner of the Original Compositions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray to this Court for judgment against the Defendants, jointly and severally, as follows:

A.    Awarding Plaintiffs their actual and compensatory damages suffered as a result of Defendants' continuing unlawful, illegal and infringing conduct in

an amount to be determined at trial, but which are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS);

B.    Awarding Plaintiffs any and all gross revenue, income and/or profits derived by Defendants that are attributable to their past and continuing direct or contributory infringement of Plaintiffs' copyrights and exclusive rights in and to the Original Compositions contained in the Infringing Album in an amount to be determined at trial, but which are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS);

C.    Awarding Plaintiff, at his election and to the extent permitted by law, the maximum amount of statutory damages against Defendants for each work contained in the Original Compositions infringed and for each act of infringement (including all past and continuing infringement) in an amount to be determined at trial, but which are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS);

D.    Awarding Plaintiffs, at their election and to the extent permitted by law, the maximum amount of statutory damages against Defendants for each work contained in the Original Compositions infringed and for each act of infringement (including all past and continuing infringement) in an amount to be determined at trial, but which are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS);

E.    Awarding Plaintiffs any and all income, fees, monies, royalties, licenses and other remuneration Plaintiffs are reasonably entitled to receive, as a result of services rendered by Plaintiffs to Defendants in creating, composing,

arranging, authoring, composing and/or creating the Original Compositions, in an amount to be determined at trial, but which are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS);

F.      Awarding Plaintiffs their actual and compensatory damages as a direct and proximate result of Defendants' unjust enrichment at Plaintiffs' expense in an amount to be determined at trial, but in no event less than $5,000,000.00 (FIVE MILLION DOLLARS);

J.      In the alternative, if any named Defendant, or any such Defendant(s)' subsidiaries, affiliates, employees, agents or representatives, is determined or proven to be a co-author and/or co-owner of the Original Compositions with Plaintiffs; The Court Order: (i) any such co-author and/or co-owner to render an accounting to ascertain the total amount of proceeds, income, monies, royalties, profits, fees, licenses and other compensation generated by the past and continuing exploitation of the Original Compositions contained in the Infringing Album and received by any such co-author and/or co-owner as a result of said co-author and/or co-owner exploitation of the Composition; and (ii) an Award to Plaintiffs in a sum equal to 80% of the total amount of any such proceeds, royalties, profits, fees, licenses and other compensation actually received by any such Defendant co-author/co-owner.

K.      Awarding Plaintiffs prejudgment interest according to law;

M.      Awarding Plaintiffs' reasonable attorneys' fees, costs and expenses relating to this action; and

N.      Awarding Plaintiff such other and further relief as the Court may deem just

and proper.

Dated:          September 18, 2024,            Respectfully submitted,

/s/ Gail Walton
_____

Law Offices of Gail M. Walton
1500 Astor Avenue, 2nd Floor
Bronx, New York 10469
(718) 655-6000
*Attorney for Plaintiffs*

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure.

Dated:          September 18, 2024,            Respectfully submitted,

/s/ Gail Walton
_____

Law Offices of Gail M. Walton
1500 Astor Avenue, 2nd Floor
Bronx, New York 10469
(718) 655-6000
*Attorney for Plaintiffs*



```
Type of Work:        Music

Registration Number / Date:
                     PA0002362471 / 2022-06-02

Application Title: Works Published on the Album Country Grammar.

Title:               Works Published on the Album Country Grammar.

Appears in:          Country Grammar

Description:         Electronic file (eService)

Copyright Claimant:
                     Ali Jones.
                     Torhi Harper.

Date of Creation: 2000

Date of Publication:
                     2000-06-27

Nation of First Publication:
                     United States

Authorship on Application:
                     Ali, pseud. of Ali Jones; Domicile: United States;
                       Citizenship: United States. Authorship: Musical work(s)
                       (with or without lyrics): All Tracks Being Registered.
                     Murphy Lee, pseud. of Torhi Harper; Domicile: United
                       States; Citizenship: United States. Authorship: Musical
                       work(s) (with or without lyrics): All Tracks Being
                       Registered.

Copyright Note:   C.O. correspondence.
                     Regarding group registration: A group of musical works may
                       be registered in Class PA under 37 C.F.R. 202.4(k) if
                       the following requirements have been met: 1) all of the
                       musical works must be contained on the same album, as
                       defined in 37 C.F.R. 202.4(k)(1)(i); 2) the group may
                       include up to twenty musical works; 3) all the works in
                       the group must be published on the same album and on the
                       same date, all the works must be first published in the
                       same country, and the date and nation of first
                       publication for the album must be specified in the
                       application; 4) the application must provide the title
                       for the album and a title for each work in the group; 5)
                       all the works in the group must be created by the same
                       author, or the works must have a common joint author; 6)
                       the copyright claimant or co-claimants for all of the
                       works in the group must be the same person or
                       organization; and 7) the works may be registered as
                       works made for hire if they are identified in the
                       application as such.

Names:               Ali, pseud.
                     Jones, Ali
                     Lee, Murphy, pseud.
                     Harper, Torhi
                     St. Lunatics
```

================================================================================

```
Type of Work:        Sound Recording

Registration Number / Date:
                     SR0000989157 / 2023-06-04

Application Title: Steal The Show.

Title:               Steal The Show.

Description:         Compact disc (CD)

Copyright Claimant:
                     Ali Jones.
                     Tohri Harper.
                     Cornell Haynes.
                     Robert Cleveland.
                     Lavell Webb.
                     Jason Epperson.

Date of Creation:    2000

Date of Publication:
                     2000-06-27

Nation of First Publication:
                     United States

Authorship on Application:
                     Ali, pseud. of Ali Jones; Domicile: United States;
                         Citizenship: United States. Authorship: sound recording.
                     Murphy Lee, pseud. of Tohri Harper; Domicile: United
                         States; Citizenship: United States. Authorship: sound
                         recording.
                     Nelly, pseud. of Cornell Haynes; Domicile: United States;
                         Citizenship: United States. Authorship: sound recording.
                     Kyjuan, pseud. of Robert Cleveland; Domicile: United
                         States; Citizenship: United States. Authorship: sound
                         recording.
                     City Spud, pseud. of Lavell Webb; Domicile: United States;
                         Citizenship: United States. Authorship: sound recording.
                     Jay E, pseud. of Jason Epperson; Domicile: United States;
                         Citizenship: United States. Authorship: sound recording.

Copyright Note:      C.O. correspondence.

Names:               Jones, Ali
                     Ali, pseud.
                     Harper, Tohri
                     Murphy Lee, pseud.
                     Haynes, Cornell
                     Nelly, pseud.
                     Cleveland, Robert
                     Kyjuan, pseud.
                     Webb, Lavell
                     City Spud, pseud.
                     Epperson, Jason
                     Jay E, pseud.

================================================================================
```

```
Type of Work:       Sound Recording and Music

Registration Number / Date:
                    SR0000972454 / 2023-06-04

Application Title: Country Grammar (Hot Shit)

Title:              Country Grammar (Hot Shit)

Description:        Compact disc (CD)

Copyright Claimant:
                    Cornell Haynes.
                    Ali Jones.
                    Tohri Harper.
                    Robert Cleveland.
                    Jason Epperson.

Date of Creation:   2000

Date of Publication:
                    2000-06-27

Nation of First Publication:
                    United States

Authorship on Application:
                    Nelly, pseud. of Cornell Haynes; Domicile: United States;
                      Citizenship: United States. Authorship: sound recording,
                      lyrics.
                    Ali, pseud. of Ali Jones; Domicile: United States;
                      Citizenship: United States. Authorship: sound recording,
                      lyrics.
                    Murphy Lee, pseud. of Tohri Harper; Domicile: United
                      States; Citizenship: United States. Authorship: sound
                      recording, lyrics.
                    Kyjuan, pseud. of Robert Cleveland; Domicile: United
                      States; Citizenship: United States. Authorship: sound
                      recording, lyrics.
                    Jay E, pseud. of Jason Epperson; Domicile: United States;
                      Citizenship: United States. Authorship: sound recording,
                      music.

Copyright Note:     C.O. correspondence.

Names:              Haynes, Cornell
                    Nelly, pseud.
                    Jones, Ali
                    Ali, pseud.
                    Harper, Tohri
                    Lee, Murphy, pseud.
                    Cleveland, Robert
                    Kyjuan, pseud.
                    Epperson, Jason
                    Jay E, pseud.
```

===========================================================================

```
Type of Work:      Sound Recording and Music

Registration Number / Date:
                   SR0000974183 / 2023-06-02

Application Title: GIMME WHAT U GOT (Remix)

Title:             GIMME WHAT U GOT (Remix)

Description:       Electronic file (eService)

Copyright Claimant:
                   Ali Jones.
                   Cornell Haynes.
                   Jason Epperson.

Date of Creation:  2006

Date of Publication:
                   2006-02-21

Nation of First Publication:
                   United States

Authorship on Application:
                   Ali, pseud. of Ali Jones; Domicile: United States;
                      Citizenship: United States. Authorship: sound recording,
                      lyrics.
                   Nelly, pseud. of Cornell Haynes; Domicile: United States;
                      Citizenship: United States. Authorship: sound recording,
                      lyrics.
                   Jay E, pseud. of Jason Epperson; Domicile: United States;
                      Citizenship: United States. Authorship: sound recording,
                      music.

Pre-existing Material:
                   pre-existing material from "Strawberry Letter 23"
                      (originally recorded by Shuggie Otis and re-recorded by
                      Brothers Johnson)

Basis of Claim:    sound recording, lyrics and music.

Copyright Note:    C.O. correspondence.

Names:             Jones, Ali
                   Ali, pseud.
                   Cornell Haynes
                   Nelly, pseud.
                   Epperson, Jason
                   Jay E, pseud.


================================================================================
```

**4**

```
Type of Work:        Sound Recording and Music

Registration Number / Date:
                     SR0000965233 / 2023-06-02

Application Title: GO.

Title:               GO.

Description:         Electronic file (eService)

Copyright Claimant:
                     Ali Jones.
                     Cornell Haynes.
                     Spencer Keith Ross.
                     Talib Kweli Greene.

Date of Creation: 2010

Date of Publication:
                     2010-11-12

Nation of First Publication:
                     United States

Authorship on Application:
                     Ali, pseud. of Ali Jones; Domicile: United States;
                       Citizenship: United States. Authorship: sound recording,
                       lyrics.
                     Nelly, pseud. of Cornell Haynes; Domicile: United States;
                       Citizenship: United States. Authorship: sound recording,
                       lyrics.
                     Spencer Keith Ross; Domicile: United States; Citizenship:
                       United States. Authorship: sound recording, music.
                     Talib Kweli, pseud. of Talib Kweli Greene; Domicile: United
                       States; Citizenship: United States. Authorship: sound
                       recording, lyrics.

Rights and Permissions:
                     Reynolds Law Group, LLC, 3390 Peachtree Rd. NE #1100,
                       Atlanta, GA, 30326, United States, (404) 402-1408,
                       gwalters@thomasreynoldslaw.com

Names:               Jones, Ali
                     Ali, pseud.
                     Haynes, Cornell
                     Nelly, pseud.
                     Ross, Spencer Keith
                     Greene, Talib Kweli
                     Talib Kweli, pseud.
```

================================================================================

```
Type of Work:        Sound Recording

Registration Number / Date:
                     SR0000965254 / 2023-06-04

Application Title: Wrap Sumden.

Title:               Wrap Sumden.

Description:         Electronic file (eService)

Copyright Claimant:
                     Cornell Haynes.
                     Ali Jones.
                     Tohri Harper.
                     Jason Epperson.
                     Robert Cleveland.

Date of Creation:  2000

Date of Publication:
                     2000-06-27

Nation of First Publication:
                     United States

Authorship on Application:
                     Nelly, pseud. of Cornell Haynes; Domicile: United States;
                       Citizenship: United States. Authorship: sound recording,
                       lyrics.
                     Ali, pseud. of Ali Jones; Domicile: United States;
                       Citizenship: United States. Authorship: sound recording,
                       lyrics.
                     Murphy Lee, pseud. of Tohri Harper; Domicile: United
                       States; Citizenship: United States. Authorship: sound
                       recording, lyrics.
                     Jay E, pseud. of Jason Epperson; Domicile: United States;
                       Citizenship: United States. Authorship: sound recording,
                       music.
                     Kyjuan, pseud. of Robert Cleveland; Domicile: United
                       States; Citizenship: United States. Authorship: sound
                       recording, lyrics.

Names:               Haynes, Cornell
                     Nelly, pseud.
                     Jones, Ali
                     Ali, pseud.
                     Harper, Tohri
                     Murphy Lee, pseud.
                     Epperson, Jason
                     Jay E, pseud.
                     Cleveland, Robert
                     Kyjuan, pseud.


=============================================================================
```