UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALI JONES p/k/a "ALI" | : | **CASE NO.: 1:24-cv-07098-VM** |
| | : | **FIRST AMENDED COMPLAINT** |
| | : | |
| Plaintiff | : | |
| | : | **DEMAND FOR JURY TRIAL** |
| vs. | : | |
| | : | |
| UNIVERSAL MUSIC GROUP; UNIVERSAL | : | |
| MUSIC PUBLISHING GROUP; | : | |
| UNIVERSAL MUSIC CORP.; BMG SONGS, | : | |
| INC.; KOBALT MUSIC PUBLISHING | : | |
| AMERICA INC. d/b/a | : | |
| KOBALT MUSIC GROUP; | : | |
| HIPGNOSIS SONGS GROUP, LLC; | : | |
| HARBOURVIEW EQUITY PARTNERS, LLC | : | |
| And CORNELL IRA HAYNES, JR. | : | |
| p/k/a "NELLY | : | |
| | : | |
| Defendants | : | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

**ALI JONES p/k/a "ALI"** ("Plaintiff") by and through their undersigned attorneys, for their Complaint against UNIVERSAL MUSIC RECORDINGS, INC. d/b/a **UNIVERSAL MUSIC GROUP**, its agents, wholly or partially owned subsidiaries, parent companies, affiliates and/or holding companies ("Defendant UMG") **UNIVERSAL MUSIC PUBLISHING GROUP**, its agents, wholly or partially owned subsidiaries, parent companies, affiliates and/or holding companies ("Defendant UMPG"), **BMG SONGS, INC.**, its agents, wholly or partially owned subsidiaries, parent companies, affiliates and/or holding companies ("Defendant BMG"), **KOBALT MUSIC PUBLISHING AMERICA, INC. d/b/a KOBALT MUSIC GROUP**, its agents, wholly or partially owned subsidiaries, parent companies, affiliates and/or holding companies ("Defendant KOBALT"); **HIPGNOSIS SONGS GROUP, LLC** ("Defendant

Hipgnosis"), HARBORVIEW EQUITY PARTNERS, LLC ("Defendant Harbourview") and **CORNELL IRA HAYNES, JR. "NELLY"** ("Defendant Haynes") (collectively referred to herein as the "Defendants") allege, upon knowledge to themselves and upon information and belief as to all other matters, as follows:

## I.    NATURE OF THE ACTION

1.    This is a civil action for direct, contributory and/or vicarious copyright infringement, unjust enrichment, quantum meruit and/or related state law claims on behalf of Plaintiffs, the authors, creators, composers, writers and copyright owners of the lyrics to eight original musical compositions entitled: (i) "Steal the Show;" (ii) "Thick Thick Girl;" (iii) "Country Grammar;" (iv) "Wrap Something/Sumden;" (v) "Batter Up;" (vi) "Iz U;" (vii) "Go;" and (viii) "Gimme What You Got" (collectively referred to herein as the "Original Compositions")

2.    The Original Compositions were unlawfully utilized and/or exploited by Defendants to create a musical record album entitled "Country Grammar" (the "Infringing Album").

3.    Defendants, jointly and/or severally, willfully and intentionally: (i) registered the Infringing Album with United States Copyright Office falsely identifying themselves as the authors, writer, creators, and/or copyright owners of the Original Compositions, including those contained therein; (ii) manufactured, distributed, used, commercialized, sold and/or otherwise exploited the Original Composition, via their exploitation of the Infringing Album, without Plaintiff's written authorization or consent; (iii) induced and/or caused various third parties including, but not limited to, various television and radio stations to broadcast, publicly perform and/or otherwise exploit the

Original Composition in the State of New York, the State of Georgia, State of Missouri and throughout the United States and overseas, without Plaintiff's written authorization and consent; (iv) unlawfully profited from the unauthorized manufacturing, distribution, use, commercialization, sale, broadcasting, public performance and other exploitation of the Original Compositions via, among other things, the exploitation of the Infringing Album; and (v) deprived Plaintiff of substantial income, proceeds, monies, concert revenues, fees, royalties and/or other remuneration, directly and/or indirectly, related to the distribution, use, commercialization, sale, broadcasting, public performance, licensing and/or other exploitation of the Original Compositions.

4.    By this action, Plaintiff seeks a declaration by this Court that he is the author, creator, composer, writer and/or lawful copyright owner of the Original Compositions, including those embodied on the Infringing Album, and that the Defendants: (i) knowingly, willfully and intentionally infringed Plaintiff's copyrights and exclusive rights in and relating to the Original Compositions in violation of the United States Copyright Act, 17 U.S.C. §§106, 115 and 501; (ii) induced, caused and/or materially contributed to the infringement of Plaintiff's copyrights and/or exclusive rights in and relating to the Original Compositions by others in violation of the United States Copyright Act, 17 U.S.C. §§106, 115 and 501; (iii) were unjustly enriched by the services performed by Plaintiff in authoring, creating, composing, and/or writing the Original Compositions; (iv) deprived Plaintiff of substantial income, proceeds, monies, fees, royalties and other remuneration, directly and/or indirectly related to Defendants' distribution, use, commercialization, sale, broadcasting, public performance, licensing and other exploitation of the Original Compositions.

5.     That Defendants have committed successive acts of copyright infringement that are continuing in nature.

6.     If it is determined that Plaintiff is not the sole creator, author and copyright owner of the Original Compositions, then Plaintiff states, in the alternative, that he is co-author and/or co-owner of the Original Compositions, including those embodied on the Infringing Album, with Defendant Haynes.

7.     Plaintiff states that he and Defendant Haynes collaborated by creating and writing the Original Compositions for the common purpose of commercially exploiting the Original Compositions.

8.     Plaintiff further states, in the alternative, that he and Defendant Haynes intended that their combined, but independent, contributions be utilized to create the Original Compositions and, as a result, are joint authors and/or joint owners of the Original Compositions including those embodied on the Infringing Album.

9.     As joint authors of the Original Compositions, Plaintiff hereby demands an accounting of all income, profits and/or royalties generated by the distribution, sale, use, commercialization, public performance, concert revenue and/or any other exploitation of the Original Compositions by Defendant Haynes and/or by any of the Defendants Defendant Haynes licensed or granted rights to exploit the Original Compositions.

10.     Plaintiff is entitled to all legal, equitable and financial relief, as requested herein, to remedy Defendants' unlawful and infringing conduct.

## II.     <u>JURISDICTION AND VENUE</u>

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b).  This Court also has original jurisdiction over this

action pursuant to 28 U.S.C. §1332 (a), because there is complete diversity between Plaintiff and Defendants and the total amount in controversy exceeds $75,000.00. This Court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. §1367.

12.    Defendants' unlawful acts alleged herein are continuing in nature and that each act constitutes a separate and successive act of copyright infringement by Defendants with each new act of infringement giving rise to a discrete claim of infringement that accrues at the time the infringement occurred.

13.    This Court has personal jurisdiction over all Defendants because Defendants: (i) solicit, transact and conduct business in the State of New York and in this District and are regularly doing or soliciting business or engaging in a persistent course of conduct in this State and in this District; (ii) receive substantial revenue from the State of New York and the infringing conduct occurred in the State of New York and within this District; (iii) expect or reasonably should expect their conduct to have consequences in the State of New York; (iv) directly or indirectly infringed Plaintiffs' copyrights in and to the Original Compositions, via the exploitation of the Infringing Album, in the State of New York and in this District; and (v) have caused harm to Plaintiffs in the State of New York.

14.    Venue is properly laid in this District pursuant to 28 U.S.C. § 1391 (b) and (c), §1400 (a) in that Defendants transact business in this judicial district, and/or a substantial part of the events giving rise to Plaintiffs' causes of action occurred in this District.

### III.    PARTIES

15.    Plaintiff Jones is a musical recording artist and the composer, arranger, writer and copyright owner of the Original Compositions.  A copy of Plaintiff's copyright registrations for the Original Compositions is attached hereto as **Exhibit A.**  Plaintiff Jones resides in Cumming, Georgia. Plaintiff Jones is, and at all times relevant herein was, a member of the musical recording group known as the "St. Lunatics."

16.    Upon information and belief, Defendant Universal Music Recordings, Inc. d/b/a Universal Music Group ("UMG") is a corporation duly organized and existing under the laws of a State located within the United States with its principal place of business at 1755 Broadway, New York, New York 10019.  Upon information and belief, Defendant UMG is one of the largest music companies in the World and is licensed and authorized to do business in the State of New York and actively transacts business in the State of New York and in this District.

17.    Upon information and belief, Defendant UMG is engaged in the business of manufacturing, distributing, marketing, selling and otherwise exploiting musical compositions in the form of compact discs ("cds"), tapes, and phonographic records.  Upon information and belief, Defendant UMG directly or indirectly created, manufactured, distributed, used, commercialized, sold and/or otherwise exploited the Original Compositions, including those embodied on the Infringing Album, in the State of New York, within this District, throughout the United States and overseas, all without Plaintiff's written authorization and consent.

18.    Upon information and belief, Defendant UMPG is a subsidiary of Universal Music Group Holdings, Inc., is a corporation duly organized and existing under the laws

of a State located within the United States with its principal place of business at 2100 Colorado Avenue, Santa Monica, California 90404. Upon information and belief, Defendant UMPG is one of the largest song publishing companies in the World and is licensed and authorized to do business in the State of New York and actively transacts business in the State of New York and in this District.

19.     Upon information and belief, Defendant UMPG is engaged in the business of acquiring, exploiting and licensing musical compositions and collecting royalties from the exploitation of musical compositions for copyright owners. Upon information and belief, Defendant UMPG directly or indirectly published, distributed, publicly performed, used, licensed, commercialized, sold, collected royalties and otherwise exploited the Original Compositions, including those contained in the Infringing Album, in the State of New York, within this District, throughout the United States and overseas, all without Plaintiff's written authorization and consent.

20.     Defendant BMG is a corporation duly organized and existing under the laws of the State located within the United States with its principal place of business at 1540 Broadway, New York, New York 10036. Upon information and belief, Defendant BMG is one of the largest song publishing companies in the World and is licensed and authorized to do business in the State of New York and actively transacts business in the State of New York and in this District.

21.     Upon information and belief, Defendant BMG is engaged in the business of acquiring, exploiting and licensing musical compositions and collecting royalties from the exploitation of musical compositions for copyright owners. Upon information and belief, Defendant BMG directly or indirectly published, distributed, publicly performed, used,

licensed, commercialized, sold, collected royalties and otherwise exploited the Original Compositions, including those contained in the Infringing Album, in the State of New York, within this District, throughout the United States and overseas, all without Plaintiff's written authorization and consent.

22.    Upon information and belief, Defendant KOBALT is a corporation duly organized and existing under the laws of a State located within the United States with its principal place of business at 2 Gansevoort Street, 6th Floor, New York, New York 10014. Upon information and belief, Defendant KOBALT is a song publishing and/or publishing administration company and is licensed and authorized to do business in the State of New York and actively transacts business in the State of New York and in this District.

23.    Upon information and belief, Defendant KOBALT is engaged in the business of acquiring, exploiting and licensing musical compositions and collecting royalties from the exploitation of musical compositions for copyright owners.    Upon information and belief, Defendant KOBALT directly or indirectly published, distributed, publicly performed, used, licensed, commercialized, sold, collected royalties and otherwise exploited the Original Compositions, including those contained in the Infringing Album, in the State of New York, within this District, throughout the United States and overseas, all without Plaintiffs' written authorization and consent.

24.    Upon information and belief, Defendant HIPGNOSIS is a corporation duly organized and existing under the laws of a State located within the United States with its principal place of business at CT Corporation, 28 Liberty Street, New York, New York 10005. Upon information and belief, Defendant HIPGNOSIS is a song publishing and/or publishing administration company and is licensed and authorized to do business in the

State of New York and actively transacts business in the State of New York and in this District.

25.    Upon information and belief, Defendant HIPGNOSIS is engaged in the business of acquiring, exploiting and licensing musical compositions and collecting royalties from the exploitation of musical compositions for copyright owners.  Upon information and belief, Defendant HIPGNOSIS directly or indirectly published, distributed, publicly performed, used, licensed, commercialized, sold, collected royalties and otherwise exploited the Original Compositions, including those contained in the Infringing Album, in the State of New York, within this District, throughout the United States and overseas, all without Plaintiff's written authorization and consent.

26. Upon information and belief, Defendant HarbourView is a limited liability company duly organized and existing under the laws of a State located within the United States with its principal place of business at 110 Edison Place, Newark, New Jersey, 07102. Upon information and belief, Defendant HarbourView is an equity and equity-related investment company licensed and authorized to do business in the State of New Jersey and actively transacts business in the State of New York and in this District.

27.    Upon information and belief, Defendant HarbourView is a global investment firm specializing in acquiring publishing rights, master recordings, and other high-value opportunities within the entertainment and media industries. Upon information and belief, Defendant HarbourView directly or indirectly published, distributed, publicly performed, used, licensed, commercialized, sold, collected royalties and otherwise exploited the Original Compositions, including those contained in the Infringing Album,

in the State of New York, within this District, throughout the United States and overseas, all without Plaintiff's written authorization and consent.

28. Defendant Haynes is a musical recording artist in the music industry, specifically in the "rap" or "hip-hop" genre. Upon information and belief, Defendant Haynes is a resident of the State of California, but actively transacts business in the State of New York and in this District. Defendant Haynes was a member of the musical recording group known as the "St. Lunatics." Upon information and belief, Defendant Haynes has falsely and fraudulently claimed that he is the author, arranger, composer, writer and/or creator of the Original Compositions, including those embodied on the Infringing Album, and unlawfully exploited the Original Compositions without Plaintiff's written authorization and consent.

29. In the alternative, to the extent that Defendant Haynes' alleged independent contribution to the creation of the lyrics contained in the Original Compositions was copyrightable, then Plaintiff and Defendants are co-authors or joint authors of the Original Compositions because Plaintiff and Defendant Haynes jointly contributed to the creation of the Original Compositions with the intention that they be considered joint authors or joint owners thereof.

30. Defendant Haynes has commercially exploited the Original Compositions but has failed to provide an accounting of the gross income, monies, royalties, and/or other remuneration generated from his exploitation of the Original Compositions to his co-author and/or joint author, Plaintiff.

31.    As joint author, Plaintiff is entitled to an accounting of all gross income, monies, royalties, and/or other remuneration generated from Defendant Haynes' exploitation of the Original Compositions.

### IV.    FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.    Formation of the group St. Lunatics**

32.    Plaintiff, Torhi Harper p/k/a "Murphy Lee" ("Harper") Lavell Webb p/k/a "City Spud," ("Webb") Kyjuan Jones p/k/a "Kyjuan" ("Jones")and Defendant Haynes were childhood friends growing up in St. Louis, Missouri.  Sometime in 1993, the Plaintiff, Harper, Webb, Jones and Defendant Haynes formed rap group called the "St. Lunatics." While Defendant Haynes demonstrated considerable skills as a performer and vocalist, he lacked the song writing creativity possessed by Plaintiff.

33.    Between 1993 and 1997, the St. Lunatics began performing and recording "demo" song recordings as the "St. Lunatics." During these years Plaintiff provided the majority of the song writing and lyrical composition duties for the St Lunatics.  Defendant Haynes showed considerable talent in his delivery of the songs written and arranged by Plaintiff. The St. Lunatics, through these  demo tapes and public performances powered by Plaintiff's song writing, worked hard to gain the attention of various record companies in the music industry in search of a recording deal.

34.    Sometime in 1997 the St. Lunatics released their first single entitled "Gimme What You Got."  "Gimme What You Got" was written by Plaintiff and performed by the St. Lunatics.  "Gimme What You Got" was a commercial success.  The notoriety of "Gimme What You Got" continued throughout the rest of the 90's giving the St. Lunatics a foot hold in the hip-hop industry.  Through continued radio play of "Gimme What You

Got" and live performances of the song by the St. Lunatics, record companies began courting the group and expressed interest in signing them to a record deal.

### B.    Plaintiff creates the Original Compositions

35.    Upon information and belief, as the St. Lunatics notoriety and fame continued to grow throughout the rest of the 1990s, in the year 2000, Defendant UMG signed Defendant Haynes to a record deal.  Also in 2000, Defendant UMG agreed to sign the St. Lunatics to a recording deal.

36.    Since Defendant Haynes' solo album would be released before the St. Lunatics' first album, Plaintiff began writing the lyrics to what would become the Original Compositions.

37.    Sometime in 2000, Plaintiff and Defendant Haynes began recording the Original Compositions at Unique Recording Studios in New York City.  It was during these recording sessions that Plaintiff finalized the lyrics to the Original Compositions and worked with Defendant Haynes to record, among other things, the Infringing Album. Plaintiff provided the lyrics to the Original Compositions, with Defendant Haynes providing , limited writing, arrangement, and also vocal performances of the Original Compositions.

38.    At no time during the recording of the Infringing Album did Defendant Haynes ever dispute that Plaintiff wrote and arranged the lyrics contained in the Original Compositions.  In fact, Defendant Haynes, in video of their recording sessions, freely admits that Plaintiff was, and is, the writer of the Original Compositions, including those embodied on the Infringing Album.

39.     The extent of Defendant Haynes' contribution to the Original Compositions will be decided at trial. However, Plaintiff asserts that if any of Defendant Haynes' contributions are found to be copyrightable, both Plaintiff and Defendant Haynes intended their work together to make them co-authors of the Original Compositions.

**C.    The Infringing Album is a Commercial Success**

40.     Upon information and belief, the Infringing Album (entitled *Country Grammar)* was released sometime in 2000 and become a huge commercial success, making Defendant Haynes a certified rap star.

41.     Upon information and belief, as of 2016 the Infringing Album has sold more than 10 million copies and earned an estimated one hundred million dollars in gross revenue.

42.     Upon information and belief, the Defendants have continued to manufacture, distribute, sell, license, publicly perform, and/or otherwise exploit the Original Compositions by exploiting, among other things, the Infringing Album.

**D.    Plaintiff promised publishing credit for the Original Compositions**

43.     During the recording, and subsequent distribution and sale, of the Infringing Album, Defendant Haynes privately and publicly acknowledged that Plaintiff was the lyric writer for the Original Compositions and promised to ensure that Plaintiff receive writing and publishing credit for the Original Compositions.

44.     Plaintiff, relying on the promises made to him by Defendant Haynes, continued to perform shows with Defendant Haynes both in his solo performances (as a back-up performer) and as part of the group St. Lunatics.

### E.    St. Lunatics release their first record album in 2001

45.    Approximately 12 months after the release of the Infringing Album, the St. Lunatics, released their first studio album entitled, "Free City."

46.    Upon information and belief, "Free City" was released by Defendant UMG. "Free City" was a commercial and critical success.  Eventually, "Free City" reached number 3 on the US pop charts; number 1 on the US R&B Charts; and was certified gold (i.e., over 500,000 copies sold in the US) and platinum (over 1 million copies sold in the US).

47.    With the success of "Free City," the St. Lunatics began touring all over the United States performing hit songs from the album.  During this time, both Defendant Haynes and the Infringing Album were also enjoying continued commercial success and popularity.

### F.    Plaintiff repeatedly requests proof of his publishing and writing credit for the Original Compositions

48.    During the success of both the Infringing Album and "Free City," the St. Lunatics and Defendant Haynes remained extremely busy with concert tours and live performances, radio appearances and otherwise promoting their respective albums.  During this period of time, Plaintiff repeatedly reached out to Defendant Haynes and/or his authorized representatives inquiring about his publishing and writer's credit for the Original Compositions, including those embodied on the Infringing Album.

49.    Defendant Haynes, and/or his authorized representatives, repeatedly assured Plaintiff that he would receive his publishing and writing credit for the Original Compositions.  Defendant Haynes further explained that because of all the success the

parties were experiencing with the Infringing Album and the "Free City" album, the record companies had been focusing on sales and promoting the albums.

50.    Throughout the commercial success and distribution of the Infringing Album, Defendant Haynes issued direct payments to Plaintiff, and other members of the St. Lunatics as remunerations for their contributions to the creative work embodied in the Infringing Album. These payments, by implication and context, appeared to constitute recognition of Plaintiff's contributions to the album's production, marketing, or other creative elements, thereby affirming Plaintiff's stake and material involvement in the success of the Infringing Album.

51.    In or around 2019, Plaintiff sought clarification and re-engaged in communication with Defendant Haynes after a cessation of the previously consistent direct payments from Defendant Haynes to Plaintiff. Plaintiff initiated this outreach to address and understand the sudden interruption of these payments, which had previously served as acknowledgment of Plaintiff's contributions to the Infringing Album.

52.    Defendant Haynes, in direct response to Plaintiff's inquiries regarding the cessation of payments, explicitly assured Plaintiff that such payments would resume following the completion of a significant sale of Defendant Haynes' publishing rights or the execution of other major contractual agreements involving Defendant Haynes' music-related interests.

53.    During the relevant period, Plaintiff concurrently received accounting statements from Defendant UMG that failed to adequately distinguish among the various streams of income earned, resulting in a lack of clarity regarding the nature and source of

funds attributable to Plaintiff's contributions in and to the Infringing Album, the Original Compositions and Free City.

**G.    Defendant Haynes takes credit for creating the Original Compositions, including those embodied on the Infringing Album**

54.    Upon information and belief, despite repeatedly promising Plaintiff that he would receive full recognition and credit for creating and authoring the lyrics contained in the Original Compositions, it eventually became clear to Plaintiff that Defendant Haynes had no intention of providing Plaintiff with any such credit or recognition.

55.    Not only did Defendant Haynes fraudulently represent to others that he was a writer and/or creator of the Original Compositions, he also, upon information and belief, allowed other disinterested third-parties within his circle to receive credit and publishing income for songs written by Plaintiff.

**H.    Plaintiff was manipulated and defrauded by Defendant Haynes**

56.    Plaintiff, for many years, detrimentally relied on the material representations made by Defendant Haynes that he would receive the proper recognition for creating the Original Compositions and also receive the publishing income generated by the sales, distribution, licensing and/or other exploitation of the Original Compositions, including such income generated via the Infringing Album.

57.    Every time Plaintiff confronted Defendant Haynes about his publishing credit and income for creating and authoring the Original Compositions, Defendant Haynes would assure him as "friends" he would never prevent him from receiving the financial success he was entitled to as writer of the Original Compositions.

58.    Unfortunately, Plaintiff, reasonably believing that his "friend" and former band member would never steal credit for writing the Original Compositions, did not

initially pursue any legal remedies and believed Defendant Haynes would make good on his promise to ensure Plaintiff received: (i) recognition as writer and author of the Original Compositions (including those embodied on the Infringing Album); and (ii) the publishing income from the exploitation of said Original Compositions.

### I.    Plaintiffs have no alternative but to pursue legal remedies

59.    Plaintiff and other members of the St. Lunatics, became aware of a dispute between an individual named Willie Woods, Jr. p/k/a John Long ("Mr. Woods") and Defendant Haynes and/or Defendant UMPG regarding the song "Ride Wit Me" which was contained on the Infringing Album.  Upon information and belief, Mr. Woods claimed to be one of the writers on the song "Ride Wit Me" and was demanding his portion of publishing royalties from the sales, public performance and/or exploitation of "Ride Wit Me."

60.    Realizing that they were not the only writers on the Infringing Album that Defendant Haynes had failed to provide proper credit and publishing income, Plaintiff decided to seek legal advice regarding his copyrights in and to the Original Compositions.

61.    Nonetheless, Plaintiff reasonably relied on Defendant Haynes' ongoing assurances and express representations that compensation for Plaintiff's contributions would be forthcoming upon Defendant Haynes' sale of his publishing rights, creating a justifiable expectation of payment under the terms presented by Defendant Haynes.

62.    In or around 2023, Plaintiff was informed that Defendant Haynes had executed a substantial transaction, transferring a 50% interest in his publishing catalog to Defendant HarbourView. The sale purportedly encompassed prominent singles, including

"Ride Wit Me," "Dilemma," and "Hot in Herre," with the deal's valuation reported at approximately $50 million.

63. At this juncture, it became apparent that, notwithstanding Defendant Haynes' repeated assurances and purported efforts to address any outstanding matters related to Plaintiff's contributions to the Original Compositions and Infringing Album, Defendant would not fulfill his longstanding promises to compensate Plaintiff as previously represented and furthermore, that Defendant Haynes (a) did not acknowledge Plaintiff as the author and/or co-author of the Original Compositions; (b) had no intention of providing Plaintiff with his  writer's credit on the Original Compositions, including those on the Infringing Album; and (c) would not pay Plaintiff his past due publishing income or account to Plaintiff the total amount of income generated by the exploitation of the Original Compositions, including such income generated via the Infringing Album.

### J.    Defendants' Infringing Conduct

64.    Upon information and belief, Defendant UMG, manufactured, distributed, commercialized, sold and/or otherwise exploited (and continues to manufacture, distribute, commercialize, sell and/or otherwise exploit) the Original Compositions, via its exploitation of the Infringing Album, throughout the United States, including the State of New York and overseas without Plaintiff's written authorization and consent.

65.    Upon information and belief, Defendant UMG, knowingly, willfully and intentionally caused (and continues to cause) various third parties including, but not limited to, various television and radio stations to broadcast, to publicly perform and otherwise exploit the Original Compositions, via its exploitation of the Infringing Album, in the State of New York, within this District, throughout the United States and overseas, even though

Defendant UMG knew, or should have known, that it did not have Plaintiff's written authorization to do so.

66.    Upon information and belief, Defendant UMG, falsely or incorrectly attributed authorship of the Original Compositions, including those embodied on the Infringing Album to Defendant Haynes and others but not Plaintiff.

67.    Upon information and belief, Defendant Haynes registered the Original Compositions, including those embodied on the Infringing Album with the United States Copyright Office, and falsely and fraudulently identified himself, and others, instead of Plaintiff, as the author of the Original Compositions.  Defendant Haynes intentionally and willfully failed to identify Plaintiff as the author and/or writer of the Original Compositions, including those embodied on the Infringing Album.

68.    Upon information and belief, Defendant Haynes falsely and fraudulently assigned to Defendants UMPG, BMG, KOBALT and HarbourView Equity Partners, LLC his alleged publishing interest in and to the Original Compositions, including those embodied on the Infringing Album.

69.    Upon information and belief, Defendants UMPG, BMG, KOBALT, HIPGNOSIS and/or and HarbourView Equity Partners, LLC have falsely or incorrectly represented to the United States Copyright Office that they possess a copyright interest in and to the Original Compositions, including those embodied on the Infringing Album and/or are authorized to administer the publishing income generated by the exploitation of the Original Compositions, via their exploitation of the Infringing Album.

70.    The Infringing Album was a critical and commercial success, selling over 10,000,000 records worldwide and generating hundreds of millions of dollars in revenue

and profits for the Defendants. It is undisputed that Defendants have exploited, and continue to exploit the Original Compositions, via the exploitation of the Infringing Album.

71.     Upon information and belief, Defendants have unlawfully and illegally received and/or collected, and continue to receive and collect: (i) (i) significant income from various public performance societies (eg. ASCAP, BMI, SESAC) for the broadcast and public performance of the Original Compositions, including those embodied on the Infringing Album; (ii) substantial mechanical royalties from the sale of the Original Compositions, including via the Infringing Album; and (iii) substantial income from the exploitation of the Original Compositions, including via the exploitation of the Infringing Album.

72.     The acts of Defendants identified herein, have completely deprived, and continue to deprive, Plaintiff of any and all income directly or indirectly related to the Original Compositions.

73.     Defendants knew, or should have known, that they needed Plaintiff's written authorization and written consent in order to manufacture, distribute, use, commercialize, sell and/or otherwise exploit the Original Compositions, including via exploitation of the Infringing Album.  However, Defendants never obtained Plaintiff's written authorization and/or written consent for any such exploitation.

74.     Defendants UMG, UMPG, BMG, KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC knew, or should have known, that they needed Plaintiff's written authorization and/or written consent in order to receive and/or collect any monies, royalties, license fees and/or other income directly or indirectly related to the exploitation of the Original Compositions, including via the exploitation of the Infringing

Album. However, Defendants UMG, UMPG, BMG, KOBALT, HIPGNOSIS and and HarbourView Equity Partners, LLC never obtained Plaintiff's written authorization and/or written consent.

75.    Upon information and belief, Defendants have received, and have continued to receive, substantial income from the distribution, use, commercialization, sale and/or other exploitation of the Original Compositions, including via their exploitation of the Infringing Album, and have failed to make any payments to Plaintiff.

76.    As the creator, composer, writer and author of the Original Compositions, Plaintiff was, and is, entitled to receive: (i) a fee for authoring, creating, arranging and composing the Original Compositions, including those embodied in the Infringing Album; (ii) performance royalties for the broadcast, public performance and other exploitation of the Original Compositions, including via the exploitation of the Infringing Album from various royalty collection societies (e.g. ASCAP, BMI, SESAC); (iii) mechanical royalties from the sale of the Original Compositions, including via the sale of the Infringing Album; and (iv) other statutory royalties as provided by the Copyright Act.

77.    As a result of Defendants' conduct, Plaintiff has been completely deprived, and continues to be deprived, of any income, monies, royalties or other form of remuneration from the distribution, use, commercialization, sale, public performance or other exploitation of the Original Compositions, including via exploitation of the Infringing Album.

78.    If it is determined that Defendant Haynes' contribution to the creation of the Original Compositions is copyrightable; then Plaintiff states that he is co-author and/or co-owner of the copyrights and other exclusive rights in and to the Original Compositions

with Defendant Haynes, and/or any of the other named Defendants, or any such Defendant(s)' subsidiaries, affiliates, agents, employees or representatives, who Defendant Haynes has licensed or granted any copyrights in and to the Original Compositions.

79.     Plaintiff demands a declaration that he and Defendant Haynes are joint authors of the Original Composition and, as a result, further demands an accounting of all income, proceeds, profits, royalties, fees, licenses and other exploitation of the Original Compositions, including via the exploitation of the Infringing Album by Defendant Haynes or any such co-author and/or co-owner Defendants.

## CAUSES OF ACTION

### COUNT I
### DIRECT COPYRIGHT INFRINGEMENT
### (DEFENDANTS UMG, UMGP, BMG, KOBALT and HIPGNOSIS)

80.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 79 as if fully set forth herein.

81.     Defendants UMG, UMPG, BMG,  KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC have directly or indirectly infringed, and continue to infringe, Plaintiff's copyrights and exclusive rights, in and relating to the Original Compositions, under copyright law by manufacturing, distributing, using, commercializing, selling, broadcasting, publicly performing and otherwise exploiting the Original Compositions via, among other things, their exploitation of the Infringing Album without Plaintiff's written authorization or written consent, all in violation of the Copyright Act, 17 U.S.C. §§ 106, 115 and 501. Defendants UMG, UMPG, BMG and/or KOBALT direct infringement of Plaintiff's copyrights in and to the Original Compositions are continuing in nature.

82.    Upon information and belief, the foregoing acts of infringement committed by Defendants UMG, UMPG, BMG, KOBALT, HIPGNOSIS and and HarbourView Equity Partners, LLC have been willful, intentional, purposeful and have been continuing in nature.

83.    As a direct and proximate result of the acts of infringement committed by Defendants UMG, UMPG, BMG,  KOBALT,  HIPGNOSIS and HarbourView Equity Partners, LLC, Plaintiff has suffered, and will continue to suffer, severe economic and non-economic injuries and damages; therefore, Plaintiff is entitled to recover actual damages and/or the gross revenue, income and/or profits derived by Defendants UMG, UMPG, BMG,  KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC that are attributable to Defendants' infringement of Plaintiff's copyrights and exclusive rights in and to the Original Compositions pursuant to 17 U.S.C. §504(b).

84.    The exact amount of Plaintiff's actual damages and the gross revenue, income and/or profits of Defendants UMG, UMPG, BMG, KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC directly related to their infringement of Plaintiff's copyrights and exclusive rights in and to the Original Compositions are continuing in nature and will be established at trial, but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

85.    Alternatively, Plaintiff may elect to be awarded and is entitled to the maximum amount of statutory damages, to the extent permitted by law, pursuant to 17 U.S.C. §504(c), with respect to each work infringed and each act of infringement. Such statutory damages will be established at trial but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

86.     Plaintiff is further entitled to his attorneys' fees and full costs pursuant to 17 U.S.C. §505.

## COUNT II
## DIRECT COPYRIGHT INFRINGEMENT
## (DEFENDANT HAYNES)

87.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 86 as if fully set forth herein.

88.     Defendant Haynes directly infringed, and continues to infringe, Plaintiff's copyrights and exclusive rights, in and relating to the Original Compositions, including those embodied in the Infringing Album by falsely and fraudulently claiming authorship of the Original Compositions by licensing, selling and/or assigning Plaintiff's copyrights in and relating to the Original Compositions to various individuals and entities including, but not limited to, Defendants UMG, UMPG, BMG, KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC without Plaintiff's written authorization or written consent, all in violation of the Copyright Act, 17 U.S.C. §§ 106, 115 and/or 501. Defendant Haynes' direct infringement of Plaintiff's copyrights in and to the Original Compositions are continuing in nature.

89.     The foregoing acts of infringement committed by Defendants have been willful, intentional, and purposeful, are continuing in nature.

90.     As a direct and proximate result of the infringing acts committed by Defendant Haynes, Plaintiff has suffered, and continues to suffer, severe economic and non-economic injuries and damages; therefore, Plaintiff is entitled to his actual damages and the gross revenue, income and/or profits derived by Defendant Haynes that are

attributable to his infringement of Plaintiff's copyrights and exclusive rights in and to the Original Compositions pursuant to 17 U.S.C. §504(b).

91.    The exact amount of Plaintiff's actual damages and the gross revenue, income and/or profits of Defendant Haynes are continuing in nature and will be established at trial, but are in no event less than $50,000,000 (FIFTY MILLION DOLLARS).

92.    Alternatively, Plaintiff may elect to be awarded, and, therefore, is entitled to the maximum amount of statutory damages, to the extent permitted by law, pursuant to 17 U.S.C. §504(c), with respect to each work infringed and each act of infringement. Such statutory damages will be established at trial but are in no event less than $50,000,000 (FIFTY MILLION DOLLARS).

93.    Plaintiff is further entitled to his attorneys' fees and full costs pursuant to 17 U.S.C. §505.

### COUNT III
### CONTRIBUTORY COPYRIGHT INFRINGEMENT
### (DEFENDANTS UMG, UMPG, BMG, KOBALT, HIPGNOSIS AND
### HARBOURVIEW EQUITY PARTNERS, LLC)

94.    Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 93 as if fully set forth herein.

95.    Upon information and belief, Defendants UMG, UMPG, BMG, KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC intentionally induced, caused, encouraged and/or assisted, and continues to induce, cause, encourage and/or assist, various third parties, including, but not limited to, various radio and television stations to reproduce, broadcast, publicly perform and/or otherwise exploit the Original Compositions, including those embodied on the Infringing Album in the State of New York, within this District, throughout the United States and overseas even though

Defendants UMG, UMPG, BMG,  KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC knew, or should have known, that they did not have Plaintiff's written authorization or written consent to reproduce, broadcast, publicly perform or otherwise exploit the Original Compositions in this or any other manner.

96.    Each time a third party, including, but not limited to, various radio and television stations, as a result of inducement, encouragement and/or assistance of Defendants UMG, UMPG, BMG, KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC reproduced, broadcasted, publicly performed and/or otherwise exploited the Original Compositions, including those embodied on the Infringing Album, a single, continuing infringement of Plaintiff's copyrights and exclusive rights in and to the Original Compositions occurred and continues to occur.

97.    Defendants UMG, UMPG, BMG,  KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC by and through their conduct, engaged in, and continue to engage in, the business of knowingly inducing, causing, encouraging, assisting and/or materially contributing to the above described unauthorized broadcasting, public performance and other exploitation of the Original Compositions, including those embodied on the Infringing Album; thereby infringing Plaintiff's copyrights and exclusive rights in and relating to the Original Compositions under copyright law.

98.    Upon information and belief, the foregoing acts by Defendants UMG, UMPG, BMG, KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC have been willful, intentional, purposeful and are continuing in nature.

99.    The conduct of Defendants UMG, UMPG, BMG, KOBALT, HIPGNOSIS, and HarbourView Equity Partners, LLC as alleged herein, constitute contributory

infringement of Plaintiff's copyrights and exclusive rights in and relating to the Original Compositions in violation of the Copyright Act, 17 U.S.C. §§ 106, 115 and 501.

100.    As a direct and proximate result of the acts of contributory infringement committed by Defendants UMG, UMPG, BMG, KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC, Plaintiff has suffered, and continues to suffer, severe economic and non-economic injuries and damages; therefore, Plaintiff is entitled to his actual damages and the gross revenue, income and/or profits derived by Defendants UMG, UMPG, BMG, KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC that are attributable to said Defendants' contributory infringement of Plaintiff's copyrights and exclusive rights in and to the Original Compositions pursuant to 17 U.S.C. §504(b).

101.    The exact amount of Plaintiff's actual damages and the gross revenue, income and/or profits of Defendants UMG, UMPG, BMG, KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC are continuing in nature but will be established at trial, but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

102.    Alternatively, Plaintiff may elect to be awarded, and, therefore, is entitled to the maximum amount of statutory damages, to the extent permitted by law, pursuant to 17 U.S.C. §504(c), with respect to each work infringed and each act of infringement. Such statutory damages will be established at trial, but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

103.    Plaintiff is further entitled to his attorneys' fees and full costs pursuant to 17 U.S.C. §505.

**COUNT IV**
**CONTRIBUTORY COPYRIGHT INFRINGEMENT**
**(DEFENDANTS HAYNES)**

104.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 103 as if fully set forth herein.

105.    Upon information and belief, Defendant Haynes willfully, knowingly and intentionally induced, caused, encouraged and/or assisted, and continues to induce, cause, encourage and/or assist, various third parties, including, but not limited to, Defendants UMG, UMPG, BMG,  KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC to manufacture, distribute, use, commercialize, sell, license, broadcast, publicly perform, and otherwise exploit the Original Compositions, including those embodied on the Infringing Album even though Defendant Haynes knew, or should have known that he did not have Plaintiff's written authorization or written consent to do so.

106.    Each time Defendants UMG, UMPG, BMG,  KOBALT, HIPGNOSIS and HarbourView Equity Partners, LLC, as a result of Defendant Haynes' inducement, encouragement and/or assistance, manufactured, distributed, used, commercialized, sold, broadcasted, licensed, publicly performed and/or otherwise exploited the Original Compositions, including those embodied on the Infringing Album, a single, continuing act of infringement of Plaintiff's copyright and exclusive rights in and to the Original Compositions occurred and such infringement continues to occurs.

107.    Through his conduct, Defendant Haynes engaged in, and continues to engage in, the business of knowingly inducing, causing, encouraging, assisting and/or materially contributing to the above described unauthorized manufacturing, distribution, use, commercialization, selling, broadcasting, public performance and other exploitation

of the Original Compositions, including those embodied on the Infringing Album; thereby infringing Plaintiff's copyrights and exclusive rights in and relating to the Original Compositions under copyright law. Such infringement continues to occur.

108.    Upon information and belief, the foregoing acts by Defendant Haynes have been willful, intentional, purposeful and are continuous in nature.

109.    The acts alleged herein by Defendant Haynes constitute contributory infringement of Plaintiff's copyrights and exclusive rights in and relating to the Original Compositions in violation of the Copyright Act, 17 U.S.C. §§ 106, 115 and 501.

110.    As a direct and proximate result of the acts of contributory infringement committed by Defendant Haynes, Plaintiff has suffered, and continues to suffer, severe economic and non-economic injuries and damages; therefore, Plaintiff is entitled to recover his actual damages and the gross revenue, income and/or profits derived by Defendant Haynes that are attributable to his contributory infringement of Plaintiff's copyrights and exclusive rights in and to the Original Compositions pursuant to 17 U.S.C. §504(b).

111.    The exact amount of Plaintiff's actual damages, gross revenues, income and/or profits derived from Defendant Haynes' contributory infringement are continuing in nature and will be established at trial, but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

112.    Alternatively, Plaintiff may elect to be awarded, and, therefore, is entitled to the maximum amount of statutory damages, to the extent permitted by law, pursuant to 17 U.S.C. §504(c), with respect to each work infringed and each act of infringement.  Such statutory damages will be established at trial, but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

113. Plaintiff is further entitled to his attorneys' fees and full costs pursuant to 17 U.S.C. §505.

## COUNT V
## UNJUST ENRICHMENT

114. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 113 as if fully set forth herein.

115. Plaintiff, in good faith and in reliance on the promises and representations made by Defendant Haynes, produced, arranged, authored, composed and/or created the Original Compositions.

116. Upon information and belief, Defendants Haynes and UMG directly or indirectly: (i) consented to the services rendered by Plaintiff in composing, creating, arranging and/or authoring the Original Compositions; (ii) knew that Plaintiff expected to receive a fee and royalties for the exploitation of the Original Compositions; (iii) knew that Plaintiff expected to receive "Writer" credit for the Original Compositions, including those embodied on the Infringing Album; and (iv) knew that Plaintiff expected to receive mechanical, public performance and/or statutory royalties related to the exploitation of the Original Compositions, including those contained on the Infringing Album.

117. Upon information and belief, Defendants Haynes and UMG received a substantial economic benefit from the services rendered by Plaintiff in composing, creating, arranging, and authoring Original Compositions and were unjustly enriched as a result of the distribution, use, commercialization, sale, broadcasting, licensing, public performance and/or other exploitation of the Original Compositions, including those embodied on the Infringing Album.

118.    As the author, composer, arranger and/or creator of the Original Compositions, including those embodied on the Infringing Album, Plaintiff is (and was) reasonably entitled to receive: (i) 100% of the publishing rights in and to the Original Compositions, including those embodied on the Infringing Album; (iii) 100% of all public performance income generated by the exploitation of the Original Compositions; (iv) one-half (½) of the total mechanical royalties paid, and/or due and payable, for the Original Compositions as a result of the continued distribution, sale and/or other exploitation of the Infringing Album; (v) "Writer" credit on the Infringing Album for the Original Compositions; and (vi) any and all other statutory royalties and customary remuneration paid to an author of a musical composition.

119.    The total amount of income, monies, royalties and other remuneration Plaintiff is reasonably entitled to receive, as a result of services rendered by Plaintiff in composing, arranging, authoring and/or creating the Original Compositions, embodied in the Infringing Album are continuing in nature and will be established at trial, but are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS).

## COUNT VI
## DECLARATION OF JOINT AUTHORSHIP & DEMAND FOR AN ACCOUNTING

120.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 119 as if fully set forth herein.

121.    Alleging in the alternative, Plaintiff states that to the extent that Defendant Haynes' contribution to the creation of the Original Compositions was, or is, copyrightable, then Plaintiff states that he and Defendant Haynes are, at the very least, co-authors, joint

authors and/or co-owners of the Original Compositions, including those embodied on the Infringing Album with Defendant Haynes.

122.    That Plaintiff's contributions to the Original Compositions were independently copyrightable.

123.    That Plaintiff and Defendant Haynes created and authored the Original Compositions together and intended that their separate contributions to the Original Compositions be merged together into one work constituting the Infringing Album.

124.    That Defendant Haynes has publicly stated and declared that Plaintiff was, and is, the author and writer of the lyrics contained in the Original Compositions.

125.    That Plaintiff is entitled to a declaration from this Court that he is joint author of the Original Compositions with Defendant Haynes.

126.    That as co-authors, joint-authors and/or co-owners Plaintiff and Defendant Haynes own the Original Compositions and the Infringing Album co-equally.

127.    That as co-authors, joint-authors and/or co-owners, Plaintiff is entitled to receive a detailed account of any and all income or profits Defendant Haynes received as a result of his exploitation of the Original Compositions, including those embodied on the Infringing Album.

128.    That despite repeated requests from Plaintiff, Defendant Haynes has refused to provide any such accounting to Plaintiff.

129.    That despite written demands to Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS for an accounting of all income and profits generated from the exploitation of the Original Compositions, including those embodied on the Infringing

Album, Defendants UMG, UMPG, BMG, KOBALT and/or HIPGNOSIS, have refused to do so.

130.    That as result of acts of Defendants hereunder, Plaintiff has not received an accounting (or any accompanying payment) of the total monies generated and/or received by Defendants from the exploitation of the Original Compositions, including those embodied on the Infringing Album.

131.    Plaintiff hereby demands the Defendants produce an accounting of all monies or income generated by the exploitation of the Original Compositions, including those embodied on the Infringing Album and that Plaintiff receives a co-equal share of such monies or income with any other co-author or co-owner of the Original Compositions.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays to this Court for judgment against the Defendants, jointly and severally, as follows:

A.    Awarding Plaintiff actual and compensatory damages suffered as a result of Defendants' continuing unlawful, illegal and infringing conduct in an amount to be determined at trial, but which are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS);

B.    Awarding Plaintiff any and all gross revenue, income and/or profits derived by Defendants that are attributable to their past and continuing direct or contributory infringement of Plaintiff's copyrights and exclusive rights in and to the Original Compositions, including those embodied on the Infringing Album in an amount to be determined at trial, but which are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS);

C.      Awarding Plaintiff, at his election and to the extent permitted by law, the maximum amount of statutory damages against Defendants for each work contained in the Original Compositions infringed and for each act of infringement (including all past and continuing infringement) in an amount to be determined at trial, but which are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS);

D.      Awarding Plaintiff, at his election and to the extent permitted by law, the maximum amount of statutory damages against Defendants for each work contained in the Original Compositions infringed and for each act of infringement (including all past and continuing infringement) in an amount to be determined at trial, but which are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS);

E.      Awarding Plaintiff any and all income, fees, monies, royalties, licenses and other remuneration Plaintiff is reasonably entitled to receive, as a result of services rendered by Plaintiff to Defendants in creating, composing, arranging, authoring, composing and/or creating the Original Compositions, in an amount to be determined at trial, but which are in no event less than $50,000,000.00 (FIFTY MILLION DOLLARS);

F.      Awarding Plaintiff actual and compensatory damages as a direct and proximate result of Defendants' unjust enrichment at Plaintiff's expense in an amount to be determined at trial, but in no event less than $5,000,000.00 (FIVE MILLION DOLLARS);

J.  In the alternative, if any named Defendant, or any such Defendant(s)' subsidiaries, affiliates, employees, agents or representatives, is determined or proven to be a co-author and/or co-owner of the Original Compositions with Plaintiffs; The Court Order: (i) any such co-author and/or co-owner to render an accounting to ascertain the total amount of proceeds, income, monies, royalties, profits, fees, licenses and other compensation generated by the past and continuing exploitation of the Original Compositions, including those embodied on the Infringing Album and received by any such co-author and/or co-owner as a result of said co-author and/or co-owner exploitation of the Composition; and (ii) an Award to Plaintiff in a sum equal to 80% of the total amount of any such proceeds, royalties, profits, fees, licenses and other compensation actually received by any such Defendant co-author/co-owner.

K.  Awarding Plaintiff prejudgment interest according to law;

M.  Awarding Plaintiff's reasonable attorneys' fees, costs and expenses relating to this action; and

N.  Awarding Plaintiff such other and further relief as the Court may deem just and proper.

Dated:        November 22, 2024,        Respectfully submitted,

/s/ Precious Felder Gates

_____

Precious Felder Gates
The Law Offices of Precious Felder, LLC d/b/a ENT Legal
3355 Lenox Rd., Suite 410
Atlanta, GA 30326
(o) 404-355-9400

*Attorney for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure.

Dated:        November 22, 2024,        Respectfully submitted,

/s/ Precious Felder Gates

_____

Precious Felder Gates
The Law Offices of Precious Felder, LLC d/b/a ENT Legal
3355 Lenox Rd., Suite 410
Atlanta, GA 30326
(o) 404-355-9400

*Attorney for Plaintiff*