UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ALI JONES p/k/a ALI,                          :
                                              :        24-CV-7098 (VM) (RWL)
                          Plaintiff,          :
                                              :
          - against -                         :     **REPORT & RECOMMENDATION**
                                              :      **TO HON. VICTOR MARRERO:**
CORNELL IRA HAYNES, JR. p/k/a NELLY,          :        <u>**SANCTIONS**</u>
                                              :
                          Defendant.          :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff Ali Jones p/k/a "Ali" brought this action against his former bandmate, Defendant Cornell Ira Haynes, Jr. p/k/a "Nelly," asserting four causes of action: (1) direct copyright infringement, (2) contributory copyright infringement, (3) unjust enrichment, and in the alternative, (4) a claim for a declaration of joint authorship in certain hit songs performed by Haynes and a claim for an accounting. Before the Court is Haynes's motion for sanctions pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent authority. Haynes asserts that Jones's claims are time-barred, preempted, or otherwise frivolous, and that Jones and his attorneys should be sanctioned for commencing this suit and continuing to litigate it with knowledge of its frivolity. For the reasons discussed below, I recommend that Haynes's motion be GRANTED IN PART.[1]

**Background**

Long before the works at issue in this case dominated the charts in the early 2000s, Haynes and Jones were childhood friends who grew up together in St. Louis, Missouri.

---

[1] The motion for sanctions has been referred to me for Report and Recommendation. (Dkts. 21, 74.)

(AC ¶ 32.[2])  In or around 1993, Haynes, Jones, and several other individuals formed a hip-hop group called the St. Lunatics, whose notoriety in the 1990s earned Haynes and the St. Lunatics a recording deal with Universal Music Group ("UMG") in 2000.  (AC ¶¶ 32-35.)  That year, Haynes released his debut solo album, "Country Grammar," which sold millions of copies and rocketed Haynes to the upper echelons of hip-hop stardom.  (AC ¶¶ 40-41.)

On September 19, 2024, Jones filed the complaint (the "Original Complaint") commencing this action.  The Original Complaint was signed and filed by New York attorney Gail Melanie Walton, serving as local counsel.  (OC at 35.)  The Original Complaint was drafted by Jones's lead attorney in Atlanta, Georgia, Precious Felder Gates, who appeared pro hac vice shortly after the Original Complaint was filed.  (Dkt. 6.)

The Original Complaint depicted Haynes's ascent to commercial success as belied by deception.[3]  "While Defendant Haynes demonstrated considerable skills as performer and vocalist," Jones alleged, "he lacked the song writing creativity possessed by the other members of the St. Lunatics."  (OC ¶ 34.)  Jones claimed that he and other members of the St. Lunatics "provided all of the lyrics" to the songs that garnered Haynes fame with minimal creative contributions.  (OC ¶ 39.)  Jones asserted that he was the true author of at least eight musical recordings (the "Songs") featured on Country Grammar and other

---

[2] "AC" refers to the Amended Complaint at Dkt. 11, the operative pleading before it was voluntarily dismissed.  "OC" refers to the Original Complaint filed at Dkt. 4.

[3] Several members of the St. Lunatics formerly were plaintiffs in the present action but have voluntarily dismissed their claims against Haynes.  (Dkt. 12.)  While Haynes suggests that Jones and his attorneys never had authorization to represent the former plaintiffs, he does not move for sanctions on that basis.  As such, the Court declines to consider it.

singles and extended-play songs released by the St. Lunatics.  (*E.g.*, OC ¶¶ 1-3.)  Jones alleged that during the recording, distribution, and sale of Country Grammar, Haynes "privately and publicly acknowledged that [Jones was] the lyric writer[] for the [Songs] and promised to ensure that [Jones] received writing and publishing credit."  (OC ¶ 45.)  Jones claimed to have relied on that promise for over two decades, reinforced by continual inquiries regarding publishing and writers' credit for the Songs to Haynes or his agents that were met with "repeated assurances" that Jones would receive such credit.  (OC ¶¶ 50-52.)

Despite those alleged assurances, the Original Complaint alleged, "sometime in 2020, [Jones] eventually discovered that Defendant Haynes had been lying to [him] the entire time," taking full credit for creating the Songs and allowing "individuals within [Haynes's inner] circle" to wrongly receive publishing income generated by the Songs. (OC ¶¶ 52-55.)  "Sometime in 2020," Jones learned of a dispute against Haynes lodged by an individual named Willie Woods, Jr., who sought royalties generated by a track featured on Country Grammar.  (OC ¶ 59.)  That discovery spurred Jones to "seek legal advice regarding [his] copyrights in and to the [Songs]."  (OC ¶ 60.)

On March 26, 2021, counsel for Jones wrote a letter to Haynes's publisher seeking to establish Jones's writer's credit on the Songs and demanding retroactive income.  (Dkt. 73-6; OC ¶ 61.)  Counsel for Haynes responded on June 8, 2021, explaining that "it is simply too late to make any ownership claims 20 years after release of the songs as a matter of law.  Accordingly, all of your claims for change in authorship are hereby rejected as a matter of law and equity" (the "June 2021 Letter").  (Dkt. 73-7; OC ¶ 62.)  Jones alleged in the Original Complaint that the June 2021 Letter "expressly repudiated

[Jones's] claims of authorship or joint authorship of the [Songs]."  (OC ¶ 62; *see also* OC ¶ 125 (alleging express repudiation occurred June 8, 2021).)

The June 2021 Letter made it "clear" to Jones that Haynes had no intention of recognizing Jones as an author of the Songs, providing writer's credit, or paying publishing income generated by the Songs.  (OC ¶ 63.)  Jones thus "had no alternative but to commence legal proceedings."  (OC ¶ 63.)  Instead of taking action at that time, however, Jones waited more than three years to file the Original Complaint against Haynes as well as several now-dismissed defendants, asserting claims of direct and contributory copyright infringement (the "infringement claims"), unjust enrichment, and demand for an accounting and a declaration of joint authorship in the Songs (the "ownership claim").[4]  (OC at 22-32.)

On October 7, 2024, counsel for Haynes wrote counsel for Jones urging immediate dismissal of the action.  (Dkt. 73-2.)  Haynes explained that the three-year statute of limitations under the Copyright Act begins to run at the time a co-author of a work expressly repudiated the authorship of another purported co-author – precisely what Jones alleged in the Original Complaint occurred on June 8, 2021.  (*Id.*; *see* OC ¶ 62.)  As Jones asserted his claim more than three years after the June 2021 Letter, Haynes argued that the case was time-barred.  (Dkt. 73-2 at 2.)  Further, given that the express repudiation and ownership of the Songs were the "gravamen" of the case, Haynes argued that the infringement claims failed as well.  (*Id.*)  Finally, Haynes warned that the unjust enrichment claim was preempted because it was derivative of the rights afforded by the

---

[4] A claim of authorship is a subspecies of ownership claim.  For instance, someone could own a copyright through assignment but not be the author of the work.

Copyright Act.  (*Id.* at 2-4.)  On November 11, 2024, counsel for Haynes sent Jones's attorneys a letter and proposed motion for sanctions pursuant to Federal Rule of Civil Procedure 11 echoing the legal arguments set forth in the October 7, 2024 letter and demanding Jones withdraw the frivolous pleading.  (Dkt. 73-3.)

On November 25, 2024, Jones filed an Amended Complaint excluding any reference to dates associated with alleged wrongdoing by Haynes that appeared in the Original Complaint, as well as all allegations pertaining to the 2021 letter correspondence. Below are the numbered paragraphs from the Original Complaint reflecting relevant alterations that appear in the Amended Complaint – deletions are represented by strikethrough, and additions are represented by underline:

- 31. ~~On or about June 2021, Defendant Haynes, by and through his legal representatives, expressly repudiated Plaintiffs' claims of joint authorship.~~  (*See* AC at 10.)

- 44. Upon information and belief, ~~as of January 1, 2020,~~ the Defendants have continued to manufacture, distribute, sell, license, publicly perform, and/or otherwise exploit the [Songs]….  (*See id.* ¶ 42.)

- 52. ~~Despite repeated assurances by Defendant Haynes that Plaintiffs would receive their writing credit and publishing income for creating the Original Compositions, Plaintiffs, sometime in 2020, eventually discovered that Defendant Haynes had been lying to them the entire time.~~  (*See id.* at 16.)

- 59. ~~Sometime in 2020,~~ Plaintiffs <u>and other members of the St. Lunatics,</u> became aware of a dispute between an individual named Willie Woods, Jr. p/k/a John Long ("Mr. Woods") and Defendant Haynes and/or Defendant UMPG regarding the song "Ride Wit Me" which was contained ~~in~~ <u>on</u> [Country Grammar]. ….  (*See id.* ¶ 59.)

- 61. ~~Sometime in March 2021, Plaintiffs hired an attorney who wrote to Defendant UMPG informing them that Plaintiffs were writers and authors of the Original Compositions, that Plaintiffs were entitled to writers' credit and publishing income~~

~~from the exploitation of the Original Compositions via the Infringing Album.~~  (*See id.* at 17.)

- 62. ~~Upon information and belief, Defendant UMPG sent a copy of the aforementioned letter to Defendant Haynes' legal representation. Sometime in 2021, Defendant Haynes, via his legal representatives, expressly repudiated Plaintiffs' claims of authorship or joint authorship of the [Songs]. In addition, Defendant Haynes, via his legal representatives, claimed that Plaintiffs could not pursue or protect their copyrights in and to the [Songs] because the statute of limitations for such claims had expired.~~  (*See id.*)

- 63. ~~As a result of this communication with Defendant Haynes' legal representatives in 2021, it was clear that Defendant Haynes: did not acknowledge Plaintiffs as the authors and/or co authors of the [Songs]; had no intention of providing Plaintiffs with their writers' credit on [Country Grammar]; and would not pay Plaintiffs their past due publishing income or account to Plaintiffs the total amount of income generated by the exploitation of the [Songs] via [Country Grammar]. Given the aforementioned, Plaintiffs had no alternative but to commence legal proceedings against Defendants.~~  (*See id.*)

- 79. ~~Defendant Haynes, via his legal representatives, has expressly repudiated Plaintiffs' claim of co authorship and/or co ownership in and to the [Songs].~~ ….  (*See id.* ¶ 79.)

- 88. ~~As of January 1, 2020,~~ Defendants Haynes directly infringed, and continues to infringe, Plaintiff's~~'~~ copyrights and exclusive rights, in and relating to the [Songs] ….  (*See id.* ¶ 88.)

- 125. ~~That on or about June 8, 2021, Defendant Haynes, via his legal representatives, plainly and expressly repudiated Plaintiffs' claim of authorship and/or joint authorship in and to the [Songs].~~  (*See id.* at 32.)

The Amended Complaint contained new allegations that Haynes "issued direct payments to [Jones] … for [his] contributions to the creative work embodied in [Country Grammar].  These payments, by implication and context, appeared to constitute recognition of [Jones]'s contributions to the album's production, marketing, or other creative elements, thereby affirming [Jones]'s stake and material involvement in the success of [Country Grammar]."  (AC ¶ 50.)  Those alleged payments ceased in 2019, at

which point Jones confronted Haynes, who, "in direct response to" Jones's inquiry, "explicitly assured [Jones] that such payments would resume following the completion of a significant sale of [his] publishing rights or the execution of other major contractual agreements involving [Haynes's] music-related interests." (AC ¶¶ 51-52.)  The Amended Complaint additionally alleged that Jones received ambiguous accounting statements from UMG that did not reveal the origin of his income from the record label.[5]  (AC ¶ 53.)

While the Amended Complaint, like the Original Complaint, alleged that each time Jones confronted Haynes about payment Haynes would promise that payment would be forthcoming (OC ¶ 57; AC ¶ 57), the Amended Complaint does not allege that any such confrontation occurred after 2019.  (*See* AC ¶¶ 51, 52, 57.)  Nonetheless, Jones claims to have relied on Haynes's representations until approximately 2023, when he allegedly learned that Haynes had sold the publishing rights to half of his music catalog for $50,000,000.  (AC ¶¶ 61-62.)  Only then, according to the Amended Complaint, did it become clear to Jones that Haynes would not honor past promises of payment, nor would he recognize Jones's authorship, provide writer's credit, or pay past-due publishing income.  (AC ¶ 63.)

On December 5, 2024, counsel for Haynes wrote Jones's counsel once more demanding withdrawal of the Amended Complaint.  (Dkt. 73-4.)  The letter drew attention to the omission of dates and characterized the Amended Complaint as a "sham" that was asserted to "hoodwink the [Court] into thinking this case should proceed" on the basis that the omissions serve to "walk away from the judicial admission of the dates that evidenced

---

[5] UMG formerly was a defendant in this action but was dismissed because Jones failed to serve it.  (Dkt. 58.)

why the Complaint was time-barred and should have been dismissed," namely the June 2021 Letter.  (*Id.* at 2.)  Counsel's letter attached a proposed Rule 11 motion.[6]  On January 16, 2025, as Jones had not withdrawn the Amended Complaint, Haynes filed a motion for sanctions.  (Dkts. 18-20.)  Jones filed a response on January 30, 2025 (Dkt. 22), and Haynes replied on February 6, 2025 (Dkts. 23-24).

On December 13, 2024, Haynes filed a letter seeking a conference regarding the filing of an anticipated motion to dismiss and/or strike the Amended Complaint.  (Dkt. 17.)  Jones filed a response on February 18, 2025.  (Dkt. 28.)  On February 25, 2025, Judge Marrero directed the parties to advise the Court whether they consented to the Court's deciding the motion to dismiss based on the letter briefing or whether they requested full briefing.  (Dkt. 30.)  Haynes stood by the letter briefing (Dkt. 56), but Jones requested full briefing (Dkt. 54).  Accordingly, the Court set a briefing schedule for the motion to dismiss and denied without prejudice the motion for sanctions subject to renewal following decision on the motion to dismiss.  (Dkts. 57, 59.)  On March 26, 2025, Haynes filed a fully briefed motion to dismiss the Amended Complaint.  (Dkts. 60-62.)

Contrary to his request for full briefing, Jones did not oppose the motion to dismiss filed by Haynes.  Instead, on April 10, 2025, Jones filed a notice of voluntary dismissal.  (Dkt. 63.)  Because the notice of voluntary dismissal contained certain deficiencies, the

---

[6] Prior to filing a motion for sanctions under Rule 11(b), the moving party must serve the party against whom sanctions are sought a copy of the motion. Fed. R. Civ. P. 11(c)(2). The non-moving party then has 21 days to withdraw or correct the challenged filing.  *Id.* Haynes's December 5, 2024 letter, being served more than 21 days prior to the filing of the motion for sanctions, satisfied this "safe harbor" requirement. (*See* Dkt. 73-4 at 4 ("Defendant's Motion for Sanctions has not yet been filed with the Court and is being served on you in accordance with the safe harbor provision of Federal Rule of Civil Procedure 11(c)(2)").)  Jones does not argue to the contrary.

Clerk's Office requested the Court evaluate Jones's notice.  The same day, Haynes filed a letter with the Court requesting it retain jurisdiction over the pending motion for sanctions.  (Dkt. 64.)  Jones filed a responsive letter arguing that the voluntary dismissal deprived the Court of jurisdiction to decide the motion to dismiss.  (Dkt. 66.)  On April 16, 2025, the Court issued an order finding that Haynes had complied with Rule 11's requirement to provide the nonmoving party 21 days to correct or withdraw the pleading before filing the motion for sanctions, Fed. R. Civ. P. 11(c)(2), and thus it had jurisdiction to adjudicate the motion.  (Dkt. 69 at 7; *see also id.* at 5-6 (explaining that Jones's argument against jurisdiction was "baseless").)  Haynes filed his renewed motion for sanctions on April 18, 2025.  (Dkts. 71-73.)  Jones filed his opposition on May 1, 2025 (Dkt. 76), and Haynes filed a reply on May 8, 2025 (Dkt. 77).  The Court heard oral argument on September 17, 2025.

### Legal Standards

Haynes seeks sanctions against Jones and his attorneys under three separate regimes:  Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent authority to sanction.  The Court sets forth the standards for each.

**A.    Sanctions Under Federal Rule Of Civil Procedure 11**

Under Federal Rule of Civil Procedure 11(b), an attorney who presents a pleading to a court "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the pleading contains "claims, defenses, and other legal contentions" that are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).  Rule 11 thus "imposes an 'affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading' before

actually signing it." *Hoatson v. New York Archdiocese*, No. 05-CV-10467, 2007 WL 431098, at *9 (S.D.N.Y. Feb. 8, 2007) (quoting *O'Malley v. New York City Transit Authority*, 896 F.2d 704, 706 (2d Cir. 1990)). The proper test is: what "a reasonably competent attorney would believe." *Greenberg v. Hilton International*, 870 F.2d 926, 934 (2d Cir. 1989); *accord Storey v. Cello Holdings, LLC*, 347 F.3d 370, 387 (2d Cir. 2003) (Rule 11 sanctions may be imposed only where an attorney's conduct was "objective[ly] unreasonable[]") (internal quotation marks omitted); *Quadrozzi v. City of New York*, 127 F.R.D. 63, 78 (S.D.N.Y. 1989) ("a court must … look to the objective reasonableness of an attorney's actions under the circumstances"). Sanctions are appropriate where "it should have been patently obvious to any attorney who had familiarized himself [or herself] with the law" that the action was frivolous. *Four Keys Leasing & Maintenance Corp. v. Simithis*, 849 F.2d 770, 773 (2d Cir. 1988); *see also Healey v. Chelsea Resources, Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991) ("Rule 11 targets situations where it is patently clear that a claim has absolutely no chance of success") (internal quotation marks and citation omitted).

In considering Rule 11 sanctions, "a court cannot rely on hindsight in assessing the propriety of the attorney's conduct, but must instead base its award on the particular facts that were reasonably accessible to the attorney at the time of the signing." *LaVigna v. WABC Television, Inc.*, 159 F.R.D. 432, 434 (S.D.N.Y. 1995). A court must "resolve all doubts in favor of the signer" of the pleading. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993) (internal quotation marks omitted); *see also Quadrozzi*, 127 F.R.D. at 80. "The standard for imposing Rule 11 sanctions … is purposefully high, so as not to

stifle legal creativity and zealous advocacy."  *City of Perry, Iowa v. Procter & Gamble Co.*, No. 15-CV-8051, 2017 WL 2656250, at *2 (S.D.N.Y. June 20, 2017).

If a court determines that Rule 11(b) has been violated, Rule 11(c) authorizes the court to "impose an appropriate sanction."  Fed. R. Civ. P. 11(c)(1).  Such a sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.  The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).

**B.    28 U.S.C. § 1927 And The Court's Inherent Authority To Sanction**

Under 28 U.S.C. § 1927, the Court may require an attorney who "unreasonably and vexatiously" prolongs the proceedings to pay the expenses incurred by the opposite party "because of" such conduct.  28 U.S.C. § 1927.  Section 1927 sanctions require clear evidence that "(1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith."  *Huebner v. Midland Credit Management, Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (internal quotation marks omitted).  "[A] claim lacks a colorable basis when it is utterly devoid of a legal or factual basis."  *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999).  Bad faith exists where the attorney's actions are "motivated by improper purposes such as harassment or delay."  *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (internal quotation marks omitted) (quoting *id.* at 336).

"Determining whether sanctions are appropriate is 'one of the most difficult and unenviable tasks for a court.'  Courts must balance the goal of disciplining those 'who harass their opponents and waste judicial resources by abusing the legal process' with the expectation that litigants and their attorneys will 'pursue a claim zealously within the

boundaries of the law and ethical rules.'  Accordingly, the power to sanction 'must be exercised with restraint and discretion.'"  *Lask v. Rhee-Karn*, No. 24-CV-2666, 2025 WL 2717474, at *8 (S.D.N.Y. Sept. 24, 2025) (quoting *Schlaifer*, 194 F.3d at 341; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2132 (1991)).  In that respect, courts in the Second Circuit interpret the bad faith standard rigorously.  A finding of bad faith must be supported by "a high degree of specificity in the factual findings."  *Id.* at *9 (internal quotation marks and citation omitted).  Such a finding "'is restricted to circumstances where there is such clear **evidence** that a party commenced an action with the **sole aim** of harassment or delay or for another improper purpose.'  Thus, courts 'will only uphold [a sanctions award] when serious misconduct clearly appears on the record.'"  *Bloomfield Investment Resources Corp. v. Daniloff*, No. 17-CV-4181, 2024 WL 706965, at *2 (S.D.N.Y. Feb. 21, 2024) (Marrero, J.) (emphasis in original) (quoting *ED Capital, LLC v. Bloomfield Investment Resources Corp.*, 316 F.R.D. 77, 83 (S.D.N.Y. 2016)).

The Court also may impose sanctions against a party and its attorneys pursuant to its inherent authority to sanction.  *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000).  "The only difference between a sanctions award under § 1927 and a court's inherent power is that 'awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.'"  *United States v. Prevezon Holdings, Ltd.*, 305 F. Supp.3d 468, 478 (S.D.N.Y. 2018) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986)).  The standard for determining the propriety of sanctions under § 1927 and the Court's inherent authority is the same.  *See, e.g.*, *Oliveri*, 803 F.2d at 1273.  However, "when there is bad-faith conduct in the course

of litigation that could be adequately sanctioned under [§ 1927], the court ordinarily should rely on [§ 1927] rather than the inherent power." *Chambers*, 501 U.S. at 50.

## Discussion

Haynes argues that Jones and his attorneys should be sanctioned for both asserting and then refusing to withdraw claims that were time-barred or preempted and thus frivolously maintained. The Court agrees in part. Rule 11 sanctions are warranted for filing the Original Complaint, but there is insufficient evidence of bad faith in filing the Original Complaint to issue sanctions pursuant to § 1927 or the Court's inherent power. However, the continued pursuit of those claims with the filing of the Amended Complaint is sanctionable under both Rule 11 and § 1927. Specifically, Counsel's conduct with respect to the Amended Complaint – obfuscating what was already a known fact of express repudiation by omitting any specific references to dates or the June 2021 letter – is particularly indicative of bad faith.

In the following discussion, Section I considers sanctions under Rule 11 and examines each of Jones's substantive claims separately. *See Oliveri*, 803 F.2d at 1275 (considering various individual claims separately for purposes of sanctions because "whether or not a competent attorney after reasonable investigation would have asserted each of those claims also varies"); *RL 900 Park, LLC v. Ender*, No. 18-CV-12121, 2021 WL 738705, at *4 (S.D.N.Y. Feb. 25, 2021) ("When considering the imposition of sanctions," the Court will "examine the objective merits of each individual claim and not the pleading as a whole"). Section II evaluates sanctions under § 1927 and the Court's inherent power. Section III addresses Jones's additional arguments related to the timing of Jones's Amended Complaint and sanctions against persons other than Ms. Walton and Ms. Felder. Finally, Section IV discusses the amount and apportionment of sanctions.

13

## I.    Sanctions Under Federal Rule Of Civil Procedure 11

"[I]t should have been patently obvious" to Jones's attorneys that his copyright ownership claim was time-barred, his infringement claims could not survive in light of the untimely ownership claim, and that the Copyright Act preempted the unjust enrichment claim. *Four Keys Leasing & Maintenance Corp. v. Smithis*, 849 F.2d 770, 773 (2d Cir. 1988). Ms. Walton's presentation of the Original Complaint to the Court reflects a failure to carry out her duty to conduct a reasonable inquiry into the viability of the pleading before signing it. *See* Fed. R. Civ. P. 11(b)(2). And, despite being provided notice of the fundamental defects in the Original Complaint, Ms. Felder refused to withdraw and continued advocating those baseless claims in the Amended Complaint. Sanctions pursuant to Rule 11 therefore are warranted.

## A.    Copyright Ownership Claim

### 1.    Original Complaint

Jones's copyright ownership claim was groundless on its face from the time it was first asserted. The statute of limitations for any civil claim under the Copyright Act is three years from the date of accrual. *See* 17 U.S.C. § 507(b) ("No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued"); *Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 317 (2d Cir. 2013) (applying three-year limitations period to ownership claim). An ownership claim asserted by an alleged author, as here, accrues when "there has been an express repudiation of that claim [of authorship or ownership]." *Id.* at 317 (internal quotation marks omitted); *see also Horror Inc. v. Miller*, 15 F.4th 232, 257 (2d Cir. 2021) (authorship claims accrue when "repudiation of authorship is communicated to the claimant").

As the Original Complaint made explicit, Haynes expressly repudiated Jones's ownership claim at the very latest on June 8, 2021, when, by letter, Haynes refused to credit or compensate Jones for his alleged contributions to the Songs.  (*E.g.*, OC ¶¶ 63 ("As a result of [the June 2021 Letter], it was clear that [Haynes]: did not acknowledge [Jones] as the author[] and/or co-author[] of the [Songs]; had no intention of providing [Jones] with [his] writer['s] credit on [Country Grammar]; and would not pay [Jones] [his] past due publishing income or account to [Jones] the total amount of income generated by the exploitation of the [Songs] via [Country Grammar].  [Thus], [Jones] had no alternative but to commence legal proceedings against [Haynes]"), 125 ("on or about June 8, 2021, Defendant Haynes, via his legal representatives, plainly and expressly repudiated [Jones's] claim of authorship and/or joint authorship in and to the [Songs]").) To satisfy the three-year statute of limitations, Jones would have had to file the action no later than June 8, 2024.  He did not.  Instead, he waited until September 19, 2024 – more than three months too late.

Even before filing the Original Complaint, Ms. Walton, who signed it and presented it to the Court, necessarily was aware of the June 2021 Letter as demonstrated by having pled it in the Original Complaint.  A reasonably competent attorney would have looked up the three-year statute of limitations (if not already known) and would have known that the only way the ownership claim could not be time-barred was the application of a doctrine such as equitable estoppel or tolling.  The Original Complaint, however, did not contain a single allegation of representations or actions by Haynes after his express repudiation on June 8, 2021, let alone one that would support reasonable reliance in the face of Haynes's express repudiation.  Even cursory inquiry would have made clear to "to any attorney who

had familiarized [herself] with the law" governing the statute of limitations that the ownership claim was time-barred and thus "frivolous." *Four Keys Leasing & Maintenance Corp.*, 849 F.2d at 773.

At oral argument, Ms. Walton stated that she reviewed the Original Complaint and relied on co-counsel's assessment that the claims asserted therein were colorable. But despite the self-evident nature of the statute-of-limitations issue raised by the June 2021 Letter, Ms. Walton admitted that she did not discuss the issue with Ms. Felder before signing the Original Complaint. In so doing, irrespective of the absence of bad faith, Ms. Walton abdicated her duty under Rule 11 to conduct "an inquiry reasonable under the circumstances" to assess the viability of the pleading before placing her signature on it. Fed. R. Civ. P. 11(b).

The Court recognizes that Ms. Walton's role as local counsel was limited. Indeed, Ms. Felder claimed full responsibility for the content of both the Original and Amended Complaints. Despite her limited role, however, Ms. Walton is no less subject to Rule 11 sanctions when, as here, she signed the pleading at issue and presented it to the Court. *See Alli v. Steward-Bowden*, No. 11-CV-4952, 2013 WL 5229995, at *1 n.1 (S.D.N.Y. Sept. 17, 2013) ("lawyers who sign pleadings … are required to satisfy themselves that there is presently a basis under Rule 11 to assert [the] claims"); *Pannonia Farms, Inc. v. USA Cable*, No. 03-CV-7841, 2006 WL 2872566, at *6 nn.25-26 (S.D.N.Y. Oct. 5, 2006) (imposing Rule 11 sanctions against local counsel who signed complaint even though co-counsel admitted pro hac vice "suppl[ied] all the legal research and writing"); *Long v. Quantex Resources, Inc.*, 108 F.R.D. 416, 417-18 (S.D.N.Y. 1985) (imposing Rule 11 sanctions against local counsel who signed and presented motion papers to the court

even though local counsel was not primarily responsible for preparation of the papers), *aff'd* 888 F.2d 1376 (2d Cir. 1989); *see generally Zunzurovski v. Fisher*, No. 23-CV-10881, 2024 WL 1434076, at *3 (S.D.N.Y. Apr. 3, 2024) ("Even if he was not the only or even the lead attorney on the case, Rule 11's requirements apply to any attorney who 'present[s] to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it'") (quoting *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 n.6 (2d Cir. 2012)).

Rule 11 sanctions thus are warranted against Ms. Walton for failing to comply with Rule 11(b)(2) in asserting Jones's copyright ownership claim in the Original Complaint. *See Charles Equipment Energy Systems, LLC v. INNIO Waukesha Gas Engines, Inc.*, No. 22-CV-2716, 2023 WL 2346337, at *9 (S.D.N.Y. March 3, 2023) (imposing Rule 11 sanctions where claim was clearly time-barred and no facts supported equitable tolling); *Pentagen Technologies International Ltd. v. United States*, 172 F. Supp.2d 464, 472-73 (S.D.N.Y. 2001) (imposing Rule 11 sanctions for bringing claim that was "clearly time-barred" and lacked any "credible basis for believing that the applicable statute of limitations had been tolled"), *aff'd*, 63 F. App'x 548 (2d Cir. 2003) (summary order); *Levy v. Aaron Faber, Inc.*, 148 F.R.D. 114, 122-23 (S.D.N.Y. 1993) (imposing Rule 11 sanctions where claims were clearly barred by statutes of limitation and "a cursory investigation … would have revealed the inadequacy of [the] pleading").

### 2.    Amended Complaint

Nothing occurred between filing of the Original Complaint and the Amended Complaint to make the copyright ownership claim any more viable than it was at the time it was first included in the Original Complaint.  The facts did not materially change, and the June 2021 letter remained an indelible fact dooming the claim to being untimely.

Jones nevertheless claims that the doctrine of equitable estoppel or tolling renders timely his ownership claim in the Amended Complaint.[7]  (*See* Opp.[8])  Jones argues that Haynes's alleged "repeated payments to [Jones], made outside of formal contractual channels, and his ongoing promises that [Jones] would be compensated after the anticipated sale of [Haynes's] publishing rights," as well as ambiguous "accounting statements" from UMG, "squarely support the application of equitable estoppel, which despite the repudiation, was a promise … reasonably relied upon by [Jones]."  (*Id.* at 18-22.)  This apparent post-hoc rationalization gets Jones nowhere.

Equitable estoppel is an "extraordinary remedy" that bars a defendant from using the statute of limitations as a defense where the defendant wrongfully prevented the plaintiff from timely bringing an action.  *Twersky v. Yeshiva University*, 579 F. App'x 7, 10

---

[7] Equitable tolling suspends the accrual of a claim where defendant's conduct prevents plaintiff from learning of his injury.  *Cerbone v. International Ladies' Garment Workers' Union*, 768 F.2d 45, 49-50 (2d Cir. 1985) (equitable tolling is available where "plaintiff is ignorant of his cause of action because of the defendant's fraudulent concealment").  Equitable estoppel, on the other hand, does not toll the statute of limitations.  Rather, it excuses the untimeliness of an action where plaintiff knows or should have known of his injury – i.e., the claim has accrued – but defendant's misconduct prevented or dissuaded plaintiff from filing a claim on time.  *Id.* ("Equitable estoppel has been invoked in cases where the defendant misrepresented the length of the limitations period or in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation"); *see also Heins v. Potter*, 271 F. Supp.2d 545, 552 (S.D.N.Y. 2003) (distinguishing equitable tolling from equitable estoppel while acknowledging the "law [on these topics] is less than straightforward").  Jones invokes both terms but does not distinguish between them.  For the most part, Jones's arguments sound in equitable estoppel: namely, that Haynes lulled Jones into a false sense of security that caused him to file this action late, not that Haynes obscured facts that would have allowed Jones to ascertain that he had a claim to begin with.  However, equitable tolling is germane to the extent that Jones argues that Haynes obfuscated whether and when Jones had a claim.  As discussed below, that argument fares no better than Jones's other arguments.

[8] "Opp." refers to Jones's Response in Opposition to Defendant Haynes's Renewed Motion for Sanctions Against Plaintiff and His Counsel, located at Dkt. 76.

(2d Cir. 2014) (summary order); *see also Busher v. Barry*, No. 20-3587, 2021 WL 5071871, at *4 (2d Cir. Nov. 2, 2021) (summary order) ("Equitable estoppel applies where it would be unjust to allow a defendant to assert a statute of limitations defense because the defendant's affirmative wrongdoing produced a long delay between the accrual of the cause of action and the institution of the legal proceeding") (internal quotation marks, alterations, and citation omitted); *Heins*, 271 F. Supp.2d at 554 (similar).

To invoke equitable estoppel, a plaintiff must show that (1) the defendant made a definite misrepresentation of fact and had reason to believe that plaintiff would rely on it, and (2) the plaintiff did in fact rely on that misrepresentation to their detriment. *Tomas v. Gillespie*, 385 F. Supp.2d 240, 247 (S.D.N.Y. 2005); *see also Schwebel v. Crandall*, 967 F.3d 96, 102-03 (2d Cir. 2020).  However, equitable estoppel "is not available when, despite a defendant's misrepresentation, plaintiff has 'sufficient information available to require him to investigate whether there [is] a basis' for the action.  This is because it is unreasonable for plaintiff to rely on a misrepresentation when it has sufficient information to the contrary." *Plumbing Supply, LLC v. ExxonMobil Oil Corp.*, No. 14-CV-3674, 2016 WL 1249611, at *10 (S.D.N.Y. March 29, 2016) (alteration in original) (quoting *Twersky v. Yeshiva University*, 993 F. Supp.2d 429, 443 (S.D.N.Y. 2014)); *see generally Keywell Corp. v. Weinstein*, 33 F.3d 159, 164 (2d Cir. 1994) ("When a party is aware of circumstances that indicate certain representations may be false, that party cannot reasonably rely on those representations"); *Sanitoy, Inc. v. Shapiro*, 705 F. Supp. 152, 156 (S.D.N.Y. 1989) ("after falsity has been revealed, a plaintiff cannot claim justifiable reliance on the earlier misrepresentations").

Jones's equitable estoppel argument ignores Haynes's express repudiation in the June 2021 Letter.  Whatever promises, payments, or representations Haynes may have made to Jones prior to June 8, 2021, were squarely contradicted by Haynes's attorney informing Jones in no uncertain terms that Jones would not receive any form of profits, credit, or ownership in any of the Songs.  (*See* Dkt. 73-7.)  After the express repudiation contradicted Haynes's alleged representations, "[Jones] [was] thereby left with reason to be suspicious of [Haynes], [and] it was no longer reasonable for [Jones] to defer to his representations." *See Addeo v. Braver*, 956 F. Supp. 443, 451-52 (S.D.N.Y. 1997).  At the very least, Jones had a duty to investigate the veracity of Haynes's alleged representations. *See Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 59, 104 S. Ct. 2218, 2223 n.10 (1984) ("[if plaintiff] had knowledge of the truth, or had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means, he cannot claim to have been misled by relying upon the representation or concealment") (internal quotation marks and citation omitted); *see also Butala v. Agashiwala*, 916 F. Supp. 314, 320 (S.D.N.Y. 1996) ("[defendants'] alleged failure to disclose facts would not excuse the plaintiffs' lack of diligence in investigating the facts of which they were unquestionably aware").

Tellingly, the Amended Complaint contains no allegations that Haynes made representations of any kind ***after*** June 8, 2021.  Jones's opposition stops conspicuously short of asserting as much, vaguely alluding to "repeated payments" and "ongoing promises" untethered to any particular timeframe.  (*Id.* at 18-19.)  Such allegations are too indeterminate to support an inference that Haynes continued making similar

representations after the express repudiation was communicated. Indeed, other allegations of the Amended Complaint demonstrate that the payments and promises to which Jones refers all preceded June 8, 2021. (*See* AC ¶¶ 50-52 (alleging that payments by Haynes ceased in 2019).)

The facts here are analogous to a case from the Central District of California, *Crabtree v. Kirkman*, No. 22-CV-180, 2023 WL 8113797 (C.D. Cal. Nov. 22, 2023). In *Crabtree*, the plaintiff initiated an action in 2022 asserting, *inter alia*, a copyright ownership claim. The court found that the defendant had expressly repudiated the plaintiff's claim of ownership in 2012 when he "clearly explained his position that [plaintiff] was not owed royalties," at which point the statute of limitations began to run. *Id.* at *9. The plaintiff argued that several actions by the defendant warranted equitable estoppel nonetheless, including that the defendant "paid bonuses to [plaintiff] that were equivalent to royalty payments" and "did not provide accounting statements to [plaintiff] that would allow [plaintiff] to understand what he was owed." *Id.* The court considered those facts irrelevant because they did not "relate to the key repudiation." *Id.* The court rejected plaintiff's equitable estoppel argument and held that the action was untimely, reasoning that "[plaintiff] points to nothing that occurred ***after 2012*** that lulled him into inaction." *Id.* at *9-10 (emphasis in original).

Just as the court in *Crabtree* reasoned, allegations relating to Haynes's conduct prior to June 8, 2021, are irrelevant in light of Haynes's express repudiation as of that date and thus do not support the application of equitable estoppel. Absent a single allegation after the express repudiation contradicting it in any way, there stood no chance of success on an equitable estoppel theory. Once Haynes expressly repudiated Jones's

claim, it was no longer reasonable for Jones to rely on Haynes's representations. Thereafter, "nothing prevented [Jones] from understanding his rights and filing suit." *Id.*

Ms. Felder asserted at oral argument that Haynes's alleged misconduct did, in fact, continue after June 8, 2021, but that the Amended Complaint did not say so explicitly because discovery was needed to discern the nature of the continued representations and/or payments. Ms. Felder has it backwards. "The purpose of discovery is to find out additional facts about a well-pleaded claim, not to find out whether such a claim exists." *Diaz v. New York Paving Inc.*, 553 F. Supp.3d 11, 22 (S.D.N.Y. 2021) (internal quotation marks and citation omitted); *see also Charney v. Zimbalist*, No. 07-CV-6272, 2013 WL 12345518, at *1 (S.D.N.Y. Feb. 6, 2013) ("it is not enough for [plaintiff] to argue that she hopes discovery will reveal a plausible legal theory"); *Gelfman International Enterprises v. Miami Sun International Corp.*, No. 05-CV-3826, 2009 WL 2957849, at *4 n.5 (E.D.N.Y. Sept. 10, 2009) ("It is not permissible to file suit and use discovery as the sole means of finding out whether you have a case. Discovery fills in the details, but you must have the outline of a claim at the beginning") (internal quotation marks and citation omitted).

Allegations of Haynes's misconduct after June 8, 2021, are paramount to establishing equitable estoppel, but were not alleged even upon information and belief. Ms. Felder had an obligation to seek information from her client regarding what representations Haynes made to him. Either her review of the facts was inadequate, or no such facts exist. *See Fischer v. Samuel Montagu, Inc.*, 125 F.R.D. 391, 395 (S.D.N.Y. 1989) (imposing Rule 11 sanctions where "defense counsel either deliberately interposed a counterclaim that was unsupported by his client's own version, or failed to make the minimal amount of inquiry incumbent upon a competent attorney"). Regardless, the

allegations of the Amended Complaint do not evince the extraordinary circumstances required to invoke equitable estoppel.

Nor does Jones move the needle in his favor by invoking the equitable tolling doctrine of fraudulent concealment. (Opp. at 21-22.) To rely on that doctrine, Jones must plead three elements: "(1) wrongful concealment by defendants (2) which prevented plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim. Plaintiff must plead each of these elements with particularity as required by Rule 9(b)." *National Group for Communications & Computers Ltd. v. Lucent Technologies Inc.*, 420 F. Supp.2d 253, 265 (S.D.N.Y. 2006) (internal citation omitted); *accord Phhhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592, 603 (2d Cir. 2024); *Perlman v. General Electric*, 2024 WL 664968, at *4 (S.D.N.Y. Feb. 16, 2024). Jones satisfies none of the elements, let alone with particularity.

First, any alleged concealment occurred outside the limitations period. Jones argues that the allegedly ambiguous "accounting statements" issued by UMG – sometimes referred to as "royalty statements" in the opposition – in tandem with direct payments from Haynes, concealed the fact that the royalties Jones received were generated by works other than the Songs. (Opp. at 21-22.) The Amended Complaint, however, does not allege that Haynes issued payments to Jones any later than 2019. (*See, e.g.*, AC ¶¶ 49, 56, 57.) Further, Jones, through counsel, demanded on March 26, 2021, that Haynes reimburse Jones for "overpayments" arising from the purported failure to give proper credit and compensation for the Songs. (Dkt. 73-6 at ECF 2.) At that point, Jones necessarily knew that he was not receiving royalties for the Songs. Thus, even assuming, *arguendo*, that Haynes fraudulently concealed certain facts from Jones, the

statute of limitations could not be tolled any further than March 26, 2021. *See Crabtree*, 2023 WL 8113797, at *9 (allegation that defendant "paid bonuses to [plaintiff] that were equivalent to royalty payments" did not relate to express repudiation and therefore did not support inference that plaintiff was prevented from timely filing ownership claim); *Mahan v. Roc Nation, LLC*, No. 14-CV-5075, 2015 WL 1782095, at *4 (S.D.N.Y. Apr. 15, 2015) (where copyright dispute concerned commercially successful musical compositions, rejecting plaintiff's argument that a reasonable person would not have known he was owed unpaid royalties), *aff'd*, 634 F. App'x 329 (2d Cir. 2016).

Second, Jones does not allege "wrongful concealment **by the defendant**." *Antonios A. Alevizopoulos & Associates, Inc. v. Comcast International Holdings, Inc.*, 100 F. Supp.2d 178, 183 (S.D.N.Y. 2000) (emphasis added). Rather, Jones alleges the accounting statements were issued by nonparty UMG. (AC ¶ 53.) Yet, the Amended Complaint does not allege a nexus between UMG and Haynes.[9] *See Plumbing Supply*, 2016 WL 1249611, at *8 ("misrepresentations made by third parties unconnected to the defendant cannot support equitable estoppel").

---

[9] Jones suggests such a connection is established by an allegation in a separate action that "UMG conspired to assist [Haynes] in his infringement endeavors." (Opp. at 22 n.8 (citing *D2 Productions, Inc. v. Universal Music Corp.*, No. 25SL-CC1010 (St. Louis Cnty. 2025) ("*D2 Productions*")).) This assertion is hopelessly vague and conclusory. That aside, a court may not take judicial notice of proceedings in another case "for the truth of the matters asserted in the other litigation." *International Star Class Yacht Racing Association v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998). Additionally, "Second Circuit case law makes it clear that references to preliminary steps in litigations … that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f) of the Federal Rules of Civil Procedure." *In re Merrill Lynch & Co. Research Reports Securities Litigation*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (citing *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 894 (2d Cir. 1976)). The matter to which Jones refers has not gotten beyond the motion-to-dismiss stage. *See D2 Productions*, Dkt. 27.

Third, despite Jones's allegedly receiving accounting statements throughout "the relevant period," the Amended Complaint is devoid of allegations that Jones made even simple inquiry with UMG or Haynes into whether any of the funds in fact were attributable to the Songs.  (AC ¶ 53.)  Doing nothing for years hardly amounts to "act[ing] with reasonable diligence throughout the period he seeks to toll."  *Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007) (internal quotation marks and citation omitted); *see also Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194, 117 S. Ct. 1984, 1993 (1997) ("a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment'").

In short, the ownership claim in the Amended Complaint stood no greater chance of success than it did in the Original Complaint.  There is no basis in the law for invoking equitable estoppel or tolling under the facts alleged here.  Once Jones was informed in no uncertain terms that his ownership stake in the Songs and request for retroactive income was rejected on June 8, 2021, there was nothing to conceal or stand in the way of Jones filing suit.  Any reasonably competent attorney would have understood that this claim was destined to fail.  Indeed, Haynes's attorneys notified Ms. Felder of this very deficiency.  (*See* Dkt. 73-2 at 2.)  By presenting it to the Court nonetheless, Ms. Felder violated her Rule 11 duty and should be sanctioned.

## B.    Copyright Infringement Claims

Jones's copyright infringement claims are no less sanctionable than his copyright ownership claim.  "[W]here … plaintiff's copyright ownership is not conceded (and, in fact, the defendant holds a prior copyright registration certificate for the disputed work), copyright ownership, and not infringement, is the gravamen of the plaintiff's claim to which the statute of limitations is applied."  *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) (internal quotation marks and citations omitted); *accord Simmons v. Stanberry*, 810 F.3d

114, 116 (2d Cir. 2016) (per curiam).   "If 'the ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claim will fail.'" *Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 316-17 (2d Cir. 2013) (quoting *Kwan*, 634 F.3d at 230).   That is exactly the scenario presented here.

First, copyright ownership was not conceded.   Indeed, the parties disagree over which of them owns copyrights in the Songs.   Jones does not dispute, however, that the United States Copyright Office issued Haynes, not Jones, certificates of registration for the Songs.   (*See* AC ¶¶ 67, 69; *see also* Dkt. 73-6.)   Second, the infringement claims did not seek damages for unauthorized copying of the Songs.   They instead sought damages for the income generated by the alleged unauthorized use of the very works over which Jones now claims ownership.   In effect, the Amended Complaint sought no remedies beyond those that would flow from "a declaration by this Court that [Jones] is the author, creator, composer, writer and/or lawful copyright owner of the [Songs]."   (AC ¶ 4; *see also id.* ¶¶ 67 ("Haynes registered the Original Compositions … and fraudulently identified himself, and others, instead of [Jones], as the author of the [Songs].   [Haynes] intentionally and willfully failed to identify [Jones] as the author and/or writer of the [Songs]"), 88 (direct infringement claim alleging that Haynes infringed Jones's copyrights "by falsely and fraudulently claiming authorship … without [Jones's] written authorization or written consent").)   In short, it is clear that copyright ownership, not infringement, is the gravamen of Jones's infringement claims.

As such, the viability of the infringement claims is coterminous with the timeliness of the ownership claim.   *See, e.g.*, *Dodson v. JRL Music, Inc.*, 684 F. App'x 7, 8 (2d Cir. 2017) (summary order) (explaining that any remedies that would flow from a declaration

of copyright ownership must fail if the ownership claim is time-barred); *Simmons*, 810 F.3d at 116 ("Where the plaintiff's claims were rooted in her contested assertion of an ownership interest in the copyright, and that claim of ownership interest was time-barred …, the plaintiff [cannot] resuscitate the untimely claim by relying on claims against the defendants' [alleged infringing acts] after the plaintiff's ownership claim became time-barred"); *Big East Entertainment, Inc. v. Zomba Enterprises, Inc.*, 453 F.Supp.2d 788, 796 (S.D.N.Y. 2006) (holding that infringement claims failed and explaining that "it has been established that the statute of limitations cannot be defeated by portraying an action as one for infringement when copyright ownership rights are the true matter at issue") (internal quotation marks and citation omitted), *aff'd*, 259 F. App'x 413 (2d Cir. 2008) (summary order).

A reasonable inquiry by counsel would have revealed that the untimeliness of Jones's ownership claim would be fatal to the infringement claims regarding the same works, and there existed no argument for extending, modifying, or reversing the law on this point. By knowingly presenting to the Court the groundless copyright infringement claims in the Original Complaint and the Amended Complaint, Ms. Walton and Ms. Felder, respectively, violated their duty under Rule 11(b)(2).[10]

---

[10] Haynes's motion for sanctions contends that Jones is, at best, either a co-owner, in which case an infringement claim cannot be maintained against another co-owner, or he is not an owner at all and thus does not meet the ownership element of an infringement claim. (Mem. at 21.) Sanctions are warranted, Haynes argues, because seeking relief for copyright infringement concurrently with ownership "is improper." (*Id.*) Neither case cited by Haynes evaluates the propriety of simultaneously maintaining infringement and ownership claims. *See Baiul v. NBC Sports*, 708 F. App'x 710 (2d Cir. 2017) (summary order); *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318, 2017 WL 3671036 (S.D.N.Y. July 18, 2017), *report and recommendation adopted*, 2017 WL 4712639 (S.D.N.Y. Sept. 28, 2017). To the contrary, it is well-accepted that such

### C.    Unjust Enrichment Claim

The Copyright Act squarely preempted Jones's unjust enrichment claim.  Section 301 of the Copyright Act "preempts state law actions that seek to vindicate rights equivalent to those protected under the Copyright Act." *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp.3d 441, 453 (S.D.N.Y. 2014).  Specifically, the Copyright Act exclusively governs claims when the work at issue falls within the type of works protected by 17 U.S.C. §§ 102 and 103 and the rights that the claims seek to vindicate are equivalent to the rights already protected under 17 U.S.C. § 106.  *See* 17 U.S.C. § 301(a) ("all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 … are governed exclusively by this title. … [N]o person is entitled to any such right or equivalent right … under the common law or statutes of any State"); *Briarpatch Ltd., L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).

An unjust enrichment claim "is typically preempted if it is premised on the unauthorized use of copyrighted works, because then it is 'essentially identical' to a copyright infringement claim."  *Hines v. W. Chappell Music Corp.*, No. 20-CV-3535, 2022 WL 3646206, at *2 (S.D.N.Y. Aug. 23, 2022) (citation omitted).  "An unjust enrichment claim may escape preemption … if it possesses 'extra elements that make it qualitatively different from a copyright infringement claim.'"  *Id.* (quoting *Briarpatch*, 373 F.3d at 305).  Determination of whether a claim of unjust enrichment is "qualitatively different" from a

---

claims may be asserted in the alternative, as they have been here.  (AC ¶¶ 6, 8, 29, 121.) *See, e.g.*, *Kwan v. Schlein*, No. 05-CV-459, 2008 WL 506337, at *3 (S.D.N.Y. Feb. 21, 2008).  Thus, while the Court agrees with Haynes's conclusion that the infringement claims are sanctionable, the Court does not base its determination on the concurrent-pleading theory asserted by Haynes.

copyright claim rests on "what the plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced." *Briarpatch*, 373 F.3d at 306.

Jones's unjust enrichment claim was essentially identical to his copyright claims. Jones asserted that he, not Haynes, was entitled to the rights, income, royalties, and credits to which an author of a musical composition is entitled.  (OC ¶ 118; AC ¶ 118.) Jones alleged that Haynes was "unjustly enriched as a result of the distribution, use, commercialization, sale, broadcasting, licensing, public performance and/or other exploitation of the [Songs]."  (OC ¶ 117; AC ¶ 117.)  In other words, Jones sought to enforce through the unjust enrichment claim his rights as the purported owner of the copyright in the Songs, i.e., the exclusive rights to reproduce, distribute, and perform a copyrighted work.  *See* 17 U.S.C. § 106.  Jones's unjust enrichment claim therefore "restates the premise for [the] copyright infringement claim and then proposes the doctrine of unjust enrichment as an alternative vehicle for recovering royalties owed." *Roberts v. BroadwayHD LLC*, No. 19-CV-9200, 2022 WL 976872, at *17 (S.D.N.Y. March 31, 2022) (internal quotation marks, brackets, and citation omitted).  The claim thus is not "qualitatively different" from a copyright claim and was squarely preempted by the Copyright Act.

In opposition, Jones argues that the unjust enrichment claim was not preempted because it sought redress for "[Haynes's] fraudulent inducement[ and] concealment." (Opp. at 25.)  However, "deception is not the sort of element that would cause claims for unjust enrichment or misappropriation to be 'qualitatively different' from the Federal Copyright Act."  *Atrium Group De Ediciones Y Publicaciones, S.L. v. Harry N. Abrams,*

*Inc.*, 565 F. Supp.2d 505, 510 (S.D.N.Y. 2008); *see also Computer Associates International, Inc. v. Altai, Inc.*, 982 F.2d 693, 717 (2d Cir. 1992) ("An action will not be saved from preemption [under the Copyright Act] by elements such as … intent, which alter 'the action's scope but not its nature'") (citation omitted).  The alleged misconduct that Jones identifies provided the means by which the alleged infringement was carried out, but "leaves its fundamental nature unaltered."  *Briarpatch*, 373 F.3d at 306.

The case on which Jones relies in an attempt to save his unjust enrichment claim, *Ulloa v. Universal Music & Video Distribution Corp.*, 303 F. Supp.2d 409 (S.D.N.Y. 2004), is readily distinguishable.  In *Ulloa*, plaintiff's infringement claim was based on the alleged use of a vocal phrase plaintiff recorded in defendants' studio.  At summary judgment, defendants argued that the infringement claim should be dismissed because plaintiff either recorded the vocal phrase as a work for hire, or she impliedly licensed to defendants any copyright interest she had in the recording.  Allowing the unjust enrichment claim to proceed in the alternative to infringement, the court reasoned that "factual disputes regarding the validity of Plaintiff's copyright remain.  If a jury finds that Plaintiff has no copyright in the [vocal phrase] or that she licensed her copyrights to Defendants, then her claim of unjust enrichment is not preempted by the Copyright Act."[11] *Id*.  The court reiterated its conclusion on reconsideration:

> [E]ven if Defendants convince a jury that Plaintiff created and sang the Vocal Phrase as a work for hire, Plaintiff may still

---

[11] Jones reads nonexistent facts and holdings into *Ulloa*.  In particular, he asserts that the court allowed the unjust enrichment claim to proceed because plaintiff alleged that defendant had "engaged in deceptive conduct to obscure [plaintiff's] contributions," and that the "extra elements" of "fraudulent misrepresentation and concealment" rendered the claim "qualitatively different from a simple copyright infringement claim."  (Opp. at 24-25.) That is simply a mischaracterization – the court did not so much as allude to those concepts.

> have a claim of unjust enrichment, under which she may attempt to persuade the jury that Defendants have failed to compensate her for her time and labor.    Similarly, if Defendants establish that Plaintiff licensed her copyright interests in the composition and recording of the Vocal Phrase to Defendants, then Plaintiff may have a claim for breach of contract, under which she may attempt to persuade a jury that Defendants have failed to perform their obligations under the licensing agreement.

*Ulloa v. Universal Music & Video Distribution Corp.*, No. 01-CV-9583, 2004 WL 840279, at *2-3 (S.D.N.Y. Apr. 19, 2004).  In other words, the plaintiff's unjust enrichment claim could survive even if the infringement claim failed, because the alternative theories under which she could still prevail did not depend on a finding that the defendants had exploited her copyright without authorization.

That is not the case here. Jones alleged neither that he impliedly licensed his copyright in the Songs to Haynes, nor that Jones created any of the Songs as a work for hire.    Although Jones claimed that Haynes was enriched as a result of Jones's contributions to the works at issue, Jones alleged that Haynes did so through unauthorized use of the Songs, not because Haynes neglected to compensate Jones for the work Jones performed for Haynes.  Jones's unjust enrichment claim does no more than assert the same rights at issue in his copyright infringement claims.  Thus, it is "patently clear" that the unjust enrichment claim stood "absolutely no chance of success." *Healey*, 947 F.2d at 626.  As such, Rule 11 sanctions against Ms. Walton are appropriate for presenting such a frivolous claim in the Original Complaint.  So too for Ms. Felder, who neither substantively altered the unjust enrichment claim nor offered it under a new legal theory in the Amended Complaint.  (*Compare* OC ¶¶ 114-19, *with* AC ¶¶ 114-19.)  Ms. Felder continued to advance the unjust enrichment claim even after Haynes's attorneys provided her with volumes of relevant law foreclosing it. (*See* Dkt. 73-2 at 3-4.)

## II.    28 U.S.C. § 1927 And The Court's Inherent Power

For the reasons articulated above, both the Original and Amended Complaints asserted claims that stood no chance of succeeding on the merits.  Both pleadings thus were "utterly devoid of a … legal basis," *see Schlaifer*, 194 F.3d at 337, satisfying the first of the two requisite elements for imposing sanctions under either § 1927 or the Court's inherent power.  The following discussion thus focuses on the second element – bad faith.  Whereas the record does not support a finding of bad faith in connection with the Original Complaint, it contains ample support for a finding of bad faith in counsel's filing and prosecuting the Amended Complaint.

### A.    Original Complaint

Because the June 2021 Letter is explicitly referenced and incorporated by reference in the Original Complaint, Jones's attorneys necessarily knew of the existence and contents of the letter and that the ownership claim accrued on June 8, 2021, at the latest.[12]  That counsel knew of the June 2021 Letter but still asserted the ownership and infringement claims in the Original Complaint anyway raises the question of whether the Court may infer that Jones's attorneys acted in bad faith for deciding to prosecute a knowingly frivolous claim.  The law in this Circuit is, at times, inconsistent as to whether such an inference is permissible.[13]  Nothing in the record beyond the mere fact of the

---

[12] Although Ms. Felder claimed at oral argument that she did not actually possess the June 2021 Letter at the time the Original Complaint was filed, she confirmed that she had knowledge of its contents.  That is substantiated by the Original Complaint's inclusion of specific relevant portions of the June 2021 Letter.  (*See* AC ¶¶ 31, 62-63, 79, 125; Dkt. 73-7.)

[13] *Compare, e.g.*, *Craig v. UMG Recordings, Inc.*, 380 F. Supp.3d 324, 330 (S.D.N.Y. 2019) ("bad faith can be established [for purposes of § 1927 or the court's inherent authority] by inference from a party's decision to pursue completely meritless claims");

meritlessness of the Original Complaint itself suggests any particular improper motive. Indeed, it is equally plausible that the Original Complaint was negligently filed out of ignorance of the law.  Given the "great caution" with which courts must approach the decision to sanction a party pursuant to § 1927 or the inherent authority, the Court is reluctant to infer bad faith in these circumstances.  *Mone v. Commissioner of Internal Revenue*, 774 F.2d 570, 574 (2d Cir. 1985).  Therefore, the Court recommends that no sanctions pursuant to § 1927 or the Court's inherent authority be imposed with regard to the Original Complaint.

## B.    Amended Complaint

After being placed on notice that the ownership claim stood no chance of success, Jones did not withdraw his complaint.  Instead, his attorneys doubled down and proceeded as if the June 2021 Letter did not exist.  Haynes argues that such conduct evidences a bad-faith "attempt[] to conceal" that the ownership claim is time-barred as a

---

*and Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 661 (S.D.N.Y. 1996) (noting "[t]he total lack of substance in the Plaintiffs' RICO claims and the egregious and unjustified neglect of the required statutory elements gives rise to the inference that the action was filed for improper purposes" under Rule 11), *with, e.g.*, *Sierra Club v. United States Army Corps of Engineers*, 776 F.2d 383, 391 (2d Cir. 1985) ("we have never held that a frivolous position may be equated with an improper purpose.  Such a simple equation would turn the two-part standard into a one-part standard, a step we decline to take"); *Chong v. Kwo Shin Chang*, 599 F. App'x 18, 19-20 (2d Cir. 2015) (summary order) (vacating sanctions award because "the court's determination that 'there was absolutely no merit to the claims asserted'" did not qualify as "specific findings required to support the imposition of sanctions"); *Bloomfield Investment Resources*, 2024 WL 706965, at *2, *5 (denying motion for sanctions where moving party identified neither "clear evidence of abusive conduct or improper motive" nor "serious misconduct clearly appear[ing] on the record") (internal quotation marks omitted); *and ED Capital*, 316 F.R.D. at 83 ("Without … specific examples of bad faith or an improper course of conduct, general characterizations of groundless claims are insufficient to find that ED Capital engaged in sanctionable conduct").

result of the June 2021 Letter's express repudiation. (Mem. at 19.[14]) The Court agrees that Ms. Felder's conduct with respect to the Amended Complaint clearly evinces bad faith.

Haynes maintains that the dates and events alleged in the Original Complaint are judicial admissions to which Jones is bound for the duration of the litigation and from which Jones cannot simply walk away. (*Id.* at 18-19.) Since the knowledge of Jones and his attorneys is relevant to the bad-faith inquiry, the Court addresses this aspect of Haynes's argument at the outset of its analysis. "An allegation made only in a pleading that has been withdrawn or superseded is not a judicial admission." *Moll v. Telesector Research Group, Inc.*, 94 F.4th 218, 250 (2d Cir. 2024); *accord Strategic Marketing & Communications, Inc. v. Kmart Corp.*, 41 F. Supp.2d 268, 271 (S.D.N.Y. 1998) (allegations made in a party's "early pleadings do not … constitute determinative judicial admissions"). Thus, "a party that amends its pleadings is no longer categorically bound to its initial statements." *Id.* At the same time, "[i]t is well-established in the Second Circuit that superseded pleadings, while not judicial admissions per se, may be introduced as evidence and considered an admission." *Dweck v. Pacificorp Capital, Inc.*, No. 91-CV-2095, 1998 WL 88742, at *7 (S.D.N.Y. March 2, 1998) (citing *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984)). "A party thus cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories." *McKeon*, 738 F.2d at 31. The Court thus considers

---

[14] "Mem." refers to Defendant Haynes's Memorandum of Law in Support of the Renewed Motion for Sanctions Against Plaintiff and His Counsel, located at Dkt. 72.

allegations contained in the Original Complaint not as binding judicial admissions but rather as evidence probative of the knowledge of Jones and his attorneys.

As described above, no facts changed in any material way between filing of the Original Complaint and the Amended Complaint. Yet, Ms. Felder proceeded with the Amended Complaint and, worse, revised the Original Complaint in a manner that stripped it of the very allegations that self-evidently demonstrate that Jones's copyright claims were "fatal[ly] flaw[ed]." *Liebowitz v. Bandshell Artist Management*, 6 F.4th 267, 284 (2d Cir. 2021). Ms. Felder essentially manipulated the pleadings to obfuscate the fact of Haynes's express repudiation and the absence of any contradictory conduct or statements after that repudiation. The Court finds that conduct to be bad faith. *See Goldrich v. Masco Corp.*, No. 22-CV-3769, 2023 WL 2649049, at *3 (S.D.N.Y. March 27, 2023) ("this Court will carefully scrutinize the evidence …, and will not hesitate to impose sanctions … if it … appears that the pleadings were inappropriately manipulated") (quoting *Kermanshah v. Kermanshah*, 580 F. Supp.2d 247, 267 (S.D.N.Y. 2008)).

Jones provided the following justification – relegated to a footnote – for the suspect amendments:

> While the original Complaint referenced specific dates in March 2021 and June 8, 2021, the [Amended Complaint] appropriately described the relevant events as occurring "sometime in 2021" to broaden the factual context and focus on [Haynes's] ongoing fraudulent conduct and misrepresentations. [Jones] did not withdraw or disavow the occurrence of the earlier events; rather, the amendments were made to emphasize the continued and evolving nature of [Haynes's] misconduct, which could not be fully captured by discrete dates alone. This clarification was consistent with [Jones]'s right to refine factual allegations in light of new information and to properly frame the issues surrounding … equitable tolling and estoppel.

(Opp. at 19 n.7.)  That explanation makes no sense.  Deleting dates and allegations "broaden[s] the factual context" only insofar as it makes the narrative more ambiguous. Simply excising the dates tied to discrete events obscures, rather than highlights, the ongoing nature of Haynes's alleged conduct.

Jones's attorneys had the same knowledge of the June 2021 Letter expressly repudiating Jones's claim at the time they filed the Amended Complaint as they did at the time they filed the Original Complaint.  Jones concedes that he does not "withdraw or disavow" the allegations of the Original Complaint concerning the 2021 Letter.  (*Id.*)  Yet, the Amended Complaint omits any reference to it and fails to include any allegation of communications from or actions taken by Haynes after the June 2021 Letter that would provide a basis for even attempting to argue equitable estoppel.  The Amended Complaint had but one purpose: obfuscation.  As one court aptly noted in similar circumstances, "the deliberate omission from the complaint of any reference to the dates of the events alleged … strongly suggests that [plaintiff] and [his] counsel were aware of the statute of limitations problem from the outset and attempted to hide it."  *Freeman v. Bianco*, No. 02-CV-7525, 2003 WL 179777, at *5 (S.D.N.Y. Jan. 24, 2003); *see also Fred A. Smith Lumber Co. v. Edidin*, 845 F.2d 750, 751, 754 (7th Cir. 1988) (reversing denial of § 1927 sanctions and finding plaintiff "unreasonably multiplied the proceedings" where plaintiff, after being alerted by opposing counsel that its claim was untimely, "filed an amended [complaint] which deleted reference to the suit's untimeliness").

Jones's actions just prior to voluntarily dismissing the Amended Complaint also smack of bad faith.  By virtue of Jones's intransigence, Haynes expended significant resources litigating this matter even though the case never proceeded past the pleading

stage.  By the time Jones filed the notice of voluntary dismissal, Haynes had argued the

lack of merit of this action six times:  (1) the October 7, 2024 letter (Dkt. 73-2); (2) the

November 11, 2024 letter and proposed Rule 11 motion for sanctions (Dkt. 73-3); (3) the

December 5, 2024 letter and proposed Rule 11 motion for sanctions (Dkt. 73-4); (4) the

December 12, 2024 letter to Judge Marrero seeking a pre-motion conference (Dkt. 17);

(5) the motion for sanctions filed January 16, 2025 (Dkts. 18-20); and (6) the motion to

dismiss filed March 26, 2025 (Dkts. 60-62).  And, when the Court offered the parties a

choice between having the Court decide Haynes's motion to dismiss based on the parties'

already-submitted letter briefing in lieu of full briefing, Jones requested full briefing.  Only

after Haynes expended the time and money to fully brief the motion to dismiss did Jones

voluntarily withdraw his Amended Complaint.[15]

---

[15] Jones argues that his voluntarily dismissal is not a grounds for bad faith, asserting that he had the right to do so because Haynes had not yet answered or filed a motion for summary judgment.  (Opp. at 27-28.)  Jones is correct that he had a right to voluntarily dismiss the action, *see* Fed. R. Civ. P. 41(a)(1), but that is beside the point.  The indicia of bad faith lies in the timing of Jones's dismissal – only after causing Haynes to unnecessarily fully brief the motion to dismiss when the Court had indicated its willingness to decide the motion on the already-submitted letter briefs.  Jones attempts to excuse the timing on the basis that he voluntarily dismissed the action so he could pursue the same claims as crossclaims in a then-pending action in Missouri state court where both Haynes and Jones are named as defendants, and that he only learned of the Missouri action after Haynes filed the motion to dismiss on March 26, 2025.  *See generally*, *D2 Productions* (docket showing that summonses were issued for Jones in the Missouri action on February 21, 2025, but not reflecting whether service was perfected). That explanation is highly dubious.  The Missouri action was initiated on January 27, 2025, and removed to federal court on May 23, 2025, *see* Notice of Removal, *D2 Productions*.  Yet, even as of the date of oral argument on the instant motion (September 17, 2025), more than five months after Jones voluntarily dismissed his Amended Complaint in this action, Jones had not so much as appeared in the Missouri action, let alone filed crossclaims, and, as Ms. Felder indicated at oral argument, Jones had not even been served.  While the Federal Rules of Civil Procedure do not dictate a time by which defendants must file crossclaims, Jones's inaction in the Missouri litigation at the very least does not corroborate his stated intention.  Regardless, even without considering the timing of

Haynes has provided clear evidence of bad faith and that sanctions pursuant to § 1927 are warranted based on Jones's continued prosecution of the copyright ownership claim after being placed on notice of its defects. *See Liebowitz*, 6 F.4th at 282-83. This conclusion applies equally to the infringement claims. As explained above, Jones may not portray a baseless ownership claim as one for infringement to avoid the statute of limitations issue.

Continuing to prosecute the unjust enrichment claim after it was made clear that it was preempted, also warrants a finding of bad faith. After filing the Original Complaint, Haynes's letter and proposed Rule 11 motion clearly articulated the reasons why the unjust enrichment claim was preempted. (*See* Dkts. 73-2 at 2-4, 73-3 ¶ 7.) Haynes's October 7, 2024 letter articulated the well-established principles, explained above, that "enrichment … [does not] go[] far enough to make [the] unjust enrichment claim qualitatively different from a copyright infringement claim" (Dkt. 73-2 at 3 (internal quotation marks omitted) (quoting *Briarpatch*, 373 F.3d at 306-07)), and that an "allegation of fraudulent intent simply alters the scope of the state action but not the equivalency of its nature to a copyright infringement claim" (*Id.* at 4 (internal quotation marks omitted) (quoting *Katz Dochrermann & Epstein, Inc. v. Home Box Office*, No. 97-CV-7763, 1999 WL 179603, at *4 (S.D.N.Y. March 31, 1999)).) Still, in the Amended Complaint, the unjust enrichment claim was neither substantively altered nor offered under a new legal theory. (*Compare* OC ¶¶ 114-19, *with* AC ¶¶ 114-19.)

---

Jones's voluntary dismissal, there is more than sufficient indicia of bad faith in Jones's filing of the Original and Amended Complaints with full knowledge of the June 2021 Letter.

Jones offers no non-frivolous justification for continuing to litigate the unjust enrichment claim. In opposition, Jones argues that the claim "seeks redress not merely for the unauthorized use of a copyrighted work, but for [Haynes's] fraudulent inducement, concealment, and wrongful enrichment at [Jones]'s expense" – the very notions repudiated by the aforementioned authority cited by Haynes in his letters to Jones's attorneys. (Opp. at 24-25.) Jones's attorneys thus were informed that the claim was meritless and continued prosecuting it anyway. Therefore, the Court finds that the unjust enrichment claim was maintained in bad faith, and sanctions pursuant to § 1927 thus are warranted.

### III.    Remaining Arguments

### A.    Untimely Filing

Haynes argues that the Court should also sanction Jones pursuant to its inherent authority for amending his pleading without having first sought leave in violation of Rule 15(a)(1). Haynes's position is that Rule 15(a) permits a party to amend its pleading once as a matter of course within 21 days of service of the complaint, a responsive pleading, or a Rule 12 motion to dismiss, "***whichever is earlier***." (Mem. at 17 (emphasis in original).) Haynes's interpretation is incorrect.

"While courts once differed over whether a plaintiff lost his right to amend where he failed to amend within 21 days of serving the complaint, but the defendant had not yet answered or moved to dismiss …, the matter was resolved when Rule 15 was amended in 2023." *De Oliveira v. Tenet Healthcare*, No. 25-CV-1683, 2025 WL 2642120, at *2 (S.D.N.Y. Sept. 15, 2025) (citation omitted). The 2023 amendment replaced "no later than" with "within" to measure the time allowed to amend once as a matter of course. Fed. R. Civ. P. 15, advisory committee's note to 2023 amendment. This change made it

"clear that the right to amend continues without interruption until 21 days after the earlier of the events described in Rule 15(a)(1)(B)."  *Id.*; *see generally Hall v. Hall*, 584 U.S. 59, 75, 138 S. Ct. 1118 (2018) ("Advisory Committee Notes are a reliable source of insight into the meaning of a rule") (internal quotation marks and citation omitted).  In other words, "the time to amend once as a matter of course" does ***not*** "lapse[] 21 days after the pleading is served [to be] revived only on the later service of a responsive pleading or one of the Rule 12 motions."  *De Oliveira*, 2025 WL 2642120, at *2 (internal quotation marks omitted) (quoting advisory committee note); *see also Doe #1 v. Syracuse University*, 335 F.R.D. 356, 359 (N.D.N.Y. 2020) (adopting, under the pre-2023 regime, the reasoning of First and Seventh Circuits that, "when a responsive pleading is required[,] there is no 'time gap' during which a party cannot amend as a matter of course when no responsive pleading or motion under 12(b), (e), or (f) has been filed") (citing *United States ex rel. D'Agostino v. EV3, Inc.*, 802 F.3d 188, 193 (1st Cir. 2015); *Swanigan v. City of Chicago*, 775 F.3d 953, 963 (7th Cir. 2015)).

The Court deems *De Oliveira* and the advisory committee note persuasive. Haynes does not even mention *De Olivera* and offers no reason to suggest it should not be followed.  Haynes thus has not demonstrated that Jones lacked a colorable basis in filing his amended pleading without seeking leave, and sanctions are not warranted on this ground.

**B.    Additional Sanctionable Parties**

Haynes argues that Jones and his attorneys are equally culpable for the sanctionable conduct found here and thus Jones should be sanctioned personally pursuant to Rule 11 and the Court's inherent authority.  (Mem. at 27.)  Individual sanctions against Jones are inappropriate.

First, Rule 11 sanctions may not be imposed on Jones because the rule expressly does not permit a "monetary sanction against a represented party for violating Rule 11(b)(2)." Fed. R. Civ. P. 11(c)(5)(A); *see Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 176-77 (2d Cir. 1999) ("Permitting a Rule 11(b)(1) determination to turn entirely on a Rule 11(b)(2) violation would … render a client responsible for the frivolous claims asserted by its attorneys, contrary to Rule 11(c)([5])(A)'s explicit prohibition"); *China AI Capital Ltd. ex rel. Link Motion Inc. v. DLA Piper LLP (US)*, No. 21-CV-10911, 2024 WL 964596, at *13 (S.D.N.Y. March 6, 2024) (Marrero, J.) ("represented parties cannot be penalized with monetary sanctions for advancing frivolous legal contentions") (Marrero, J.); *Blake ex rel. Blake v. National Casualty Co.*, 607 F. Supp. 189, 193 (C.D. Cal. 1984) ("While an attorney may have to rely upon his client for facts, knowledge and interpretation of the appropriate law is [the attorney's] specialty, and for which he has been specially trained").

Second, the Court's inherent authority does not warrant sanctions because Haynes identifies no facts supporting a clear inference of bad faith against Jones in particular as distinct from his attorneys. The facts Haynes contends warrant sanctions "represent a complete abdication of **counsel's** obligation to objectively investigate a claim's factual and legal basis before asserting these claims and compounding the injury to Haynes by reasserting [them] in the [Amended Complaint]." (Mem. at 29 (emphasis added).) The facts clearly evincing bad faith here are those that informed Jones's attorneys' knowledge that the claims were frivolous and amending the complaint to obfuscate that fact. It is unlikely from the current record that Jones, a nonlawyer, would have comprehended the doctrines of accrual, equitable estoppel, and federal preemption

sufficient to appreciate the deficiencies in the pleadings.  Simply put, the Court lacks a factual basis to sanction Jones individually pursuant to the Court's inherent power.

Separately, Haynes states in a footnote that "[t]he Court may also want to sanction Thomas Reynolds pursuant to [§ 1927] or the Court's inherent powers."  Mr. Reynolds, apparently an attorney with Ms. Felder's firm, was "cc'd on the Rule 11 letters and motions and participated in the motion to dismiss and meet and confer process, even though he did not file a formal notice of appearance in the case."  (Mem. at 8 n.1.)  Assuming that all to be true, Haynes provides far too little information about Mr. Reynold's actual involvement for the Court to make an informed determination about whether it would be appropriate to impose sanctions on Mr. Reynolds.  Sanctions against Mr. Reynolds are not warranted.

## IV.    Apportionment Of Sanctions

"The imposition of sanctions and the determination of the amount of the sanctions are matters left to the district court's discretion and are not to be disturbed absent an abuse of that discretion."  *Savino v. Computer Credit, Inc.*, 164 F.3d 81, 88 (2d Cir. 1998).  District courts may fashion sanctions awards against multiple attorneys in accordance with each attorney's relative culpability.  *See J.C. v. Zimmerman*, 150 F.4th 136, 149 (2d Cir. 2025) (finding no abuse of discretion where "the district court considered the relative responsibilities of the two attorneys and apportioned sanctions accordingly"); *see also In re Yellen & Herstic*, 804 F.2d 191, 193 (2d Cir. 1986) ("We have frequently asked the district courts, in imposing sanctions, to make careful apportionment of the costs among the responsible parties").

Despite her limited role as local counsel, the Court still must enforce the Federal Rules and cannot exonerate Ms. Walton of all responsibility.  In signing and filing the

Original Complaint as local counsel, Ms. Walton assumed the responsibilities imposed by Rule 11. *See Boelter v. Hearst Communications, Inc.*, No. 15-CV-3934, 2016 WL 11898864, at *3 (S.D.N.Y. Dec. 16, 2016) ("Rule 11 imposes a duty when an attorney 'presents' a pleading by 'signing, filing, submitting, or later advocating' it") (*quoting O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996)); *Schottenstein v. Schottenstein*, 230 F.R.D. 355, 361-62 (S.D.N.Y. 2005) (imposing minimal Rule 11 sanctions against attorney who signed but did not draft complaint). As discussed above, Ms. Walton's presenting to the Court facially time-barred or preempted claims in the Original Complaint is sanctionable under Rule 11. Ms. Walton did not sign or file the Amended Complaint and therefore not subject to Rule 11 sanctions with respect to it. Further, there is no factual support for an inference of bad faith to sanction Ms. Walton on any other basis. The Original Complaint lacked any merit, but there is insufficient evidence to find bad faith by either attorney in connection with its filing.

As for Ms. Felder, Rule 11 sanctions are warranted in connection with the Amended Complaint, which she drafted and filed, but not in connection with the Original Complaint because she did not "present" that pleading to the Court within the meaning of Rule 11(b). *See* Fed. R. Civ. P. 11(b) (applying duties to attorneys who "present[] to the court a pleading ... whether by signing, filing, submitting, or later advocating it"); *Ramashwar v. Espinoza*, No. 05-CV-2021, 2006 WL 36752, at *11 (S.D.N.Y. Jan. 6, 2006) ("Since [associate] did not sign the complaint, it is inappropriate to sanction him under Rule 11"). Section 1927 sanctions, on the other hand, are warranted solely against Ms. Felder for vexatiously protracting the proceedings in bad faith by her attempt to obfuscate the facts she knew barred Jones's claims and her subsequent refusal to withdraw the Amended

Complaint in the face of overwhelming arguments that the claims could not possibly succeed.[16]

The sanctions awarded should be commensurate with each attorney's relative culpability. *See Schottenstein*, 230 F.R.D. at 362 (assigning 95 percent of sanctions award against attorney who "deserve[d] by far the greater part of the blame" and five percent against attorney who signed complaint but "relied on [co-counsel]'s assessment of the claims' validity" without making independent inquiry). The vast majority of sanctions should fall on Ms. Felder. Ms. Felder was the driving force behind the action, which caused Haynes to needlessly incur expenses to defend it. In such circumstances, an award of the reasonable attorney's fees expended is appropriate. *See Chambers*, 501 U.S. at 50-51 (imposing sanctions in the form of attorney's fees and costs incurred as a result of bad-faith conduct throughout entire course of litigation); *Schottenstein*, 230 F.R.D. at 363 (awarding percentage of total attorney's fees and expenses equal to the number of frivolous claims divided by number of total claims).

However, as the Court has not found that Ms. Felder presented to the Court the Original Complaint or acted in bad faith therewith, the sanctions award against Ms. Felder should not include any costs incurred by Haynes prior to filing of the Amended Complaint. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108, 137 S. Ct. 1178, 1186 (2017) ("the court can shift only those attorney's fees … caused by the bad-faith acts on which [the sanctions award] is based") (internal quotation marks and citation omitted); *Craig*, 2019 WL 2992043, at *4 ("section 1927 allows this Court to award only fees and

---

[16] The wrongful conduct exhibited in this litigation is adequately sanctioned under Rule 11 and § 1927. The Court thus need not invoke its inherent authority to sanction. *See Chambers*, 501 U.S. at 50.

costs that are 'reasonably incurred because of' an opposing party's sanctionable conduct") (quoting § 1927). The Court therefore recommends Ms. Felder pay Haynes's reasonable attorney's fees and costs incurred defending against this action starting from the time that the Amended Complaint was filed. *See Dukas v. Koninklijke Luchtvaart Maatschappij, N.V.*, No. 22-CV-7962, 2024 WL 4265646, at *7 (S.D.N.Y. Sept. 23, 2024) (imposing § 1927 sanctions in the form of attorney's fees and costs incurred from time at which bad-faith conduct began). Haynes also should be permitted to recover "the reasonable expenses, including attorney's fees, incurred for the motion" for sanctions. Fed. R. Civ. P. 11(c)(2); *see Bletas v. Deluca*, No. 11-CV-1777, 2011 WL 13130879, at *13-14 (S.D.N.Y. Nov. 15, 2011).

A far lesser sanction is warranted against Ms. Walton given her minimal involvement in this action. Because "the main purpose of Rule 11 is to deter improper behavior, not to compensate the victims of it," *Universitas Education, LLC v. Nova Group, Inc.*, 784 F.3d 99, 103 (2d Cir. 2015) (internal quotation marks and citation omitted), an award of attorney's fees is an inappropriate sanction. The Court thus recommends a $1,000 fine to be deposited with the Clerk of Court. *See Magnotta v. Berry*, No. 91-CV-531, 1996 WL 11238, at *7 (S.D.N.Y. Jan. 5, 1996) (imposing $1,000 fine against attorney who violated Rule 11 by submitting to court petition without conducting reasonable inquiry); *Polar International Brokerage Corp. v. Reeve*, 120 F. Supp.2d 267, 269-70 (S.D.N.Y. 2000) (allocating 10 percent of total sanctions award against law firm that had "relatively limited role in the litigation" but "signed its name to the amended complaint and various other materials filed with this Court"); *Schottenstein*, 230 F.R.D. at 361-62 (allocating five percent of total sanctions award against attorney with minimal role).

**Conclusion**

For the reasons set forth above, I recommend that Haynes's motion for sanctions be GRANTED IN PART.  Specifically, I recommend that Haynes be awarded, as against Ms. Felder, his reasonable attorney's fees expended in defending this action subsequent to filing of the Amended Complaint and bringing the instant motion.  I further recommend that Ms. Walton pay a $1,000 fine to the Clerk of Court.  Sanctions are not warranted against Mr. Reynolds or Plaintiff Jones personally.  To the extent not discussed above, the Court finds the parties' arguments to be either moot or without merit.

**Procedures For Filing Objections**

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections and responses shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Victor Marrero, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any request for an extension of time for filing objections must be addressed to Judge Marrero.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

RESPECTFULLY SUBMITTED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:  October 10, 2025
        New York, New York

        Copies transmitted on this date to all counsel of record.